[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 24, 1997
Although the two above entitled cases were tried separately, I am considering them in the same memorandum of decision because many of the issues, both factual and legal, overlap. The cases CT Page 387-T arise out of a surveillance conducted by several Hartford police officers on July 27, 1995. The notices to quit in both cases claim that the defendants used the premises for the illegal sale of drugs in violation of § 47a-11 (g) of the General Statutes. Slightly different facts apply to each defendant, although they are sisters and were the subject of the same surveillance.
Officer Ronald Duke of the Hartford Police Department testified in both cases. In the case against Maria Reyes, he testified that in response to being advised by an undercover unit that two Hispanic females were flagging down cars in an effort to sell narcotics in the area of 134 Hampton Street in Hartford, he and his partner, Officer Livingston, conducted a surveillance from the west side of the street. Officer Duke testified that he knew Maria Reyes, as she had lived in Stowe Village for some time and Stowe Village was part of his beat. He said that Maria flagged down more than one car, and that the other female would stoop into the car for a brief period of time. In his experience, this activity was likely to comprise drug transactions.
When Duke said that he would have to look at his report to CT Page 387-U clarify how many cars stopped, the defendant Maria objected on the ground that the criminal case had been dismissed, and that the "erasure statutes." §§ 54-142a et seq., therefore prohibited disclosure of any information based on records pertaining to the criminal case. The court conducted a hearing on the erasure issue[1] and the following facts were developed.
Wanda Reyes was arrested as a result of the surveillance. The criminal case against her was dismissed on April 30, 1996, apparently as a result of her successful completion of the community service labor program. The incident report, and perhaps other records, were not physically destroyed, nor, in the court's opinion, was there an obligation physically to destroy the records. Officer Duke had referred to the report in order to prepare for the hearing. He had an independent recollection of the event which was somewhat vague: he remembered that Maria flagged down more than one car, though he didn't remember how many; he remembered that his partner had found a quantity of illegal drug during the event and that the substance had been field tested positive. His independent recollection included little additional information. Although he remembered something CT Page 387-V about drugs being seized at the scene, he did not personally tag the evidence or deliver it to evidence room. He had no personal knowledge of how, or for that matter whether, the drugs got to the toxicology laboratory; he had a general idea of the procedure which was used to take evidence to the laboratory.
Dr. Joel Milzoff testified. He is the director of the state toxicology laboratory. He testified about the procedures of the laboratory; in this case, he matched the police incident report number with the laboratory reports. Four items were examined by the laboratory, and each contained heroin and cocaine.
Maria Reyes testified. She denied selling drugs, but admitted being one of the people involved in the incident with the officers. She said that at the time, she and her sister Wanda were sitting on a fence talking when two officers, whom she had known, jumped at them. She said it was possible that she had waved to someone, but it would have been to a friend. She said that her sister Wanda told her, at about the time of this incident, that she used drugs. Maria denied knowledge of her sister's use of drugs prior to the incident in question. She said CT Page 387-W that four packages, which her sister admitted to her contained drugs, were taken from Wanda, at the time of the incident.
In the case against Wanda, transcripts of the testimony of Officer Duke and of Dr. Milzoff were entered into evidence by agreement. In addition, Officer Duke testified briefly that he remembered from his own recollection that Maria and Wanda were sitting on a fence outside of 134 Hampton Street during the surveillance. Maria nagged down cars, and Wanda would then approach the cars so flagged. He remembered at least two vehicles.
Wanda Reyes did not testify.
 I
The first issue to be decided is the testimony which may be considered in light of the erasure statutes. § 54-142a et. seq. The dispositive facts were recited above; in sums the officer remembered the general idea of the surveillance without reference to the records, but did not remember specifics. The officer had CT Page 387-X read the incident report prior to testifying, but was able to sort out what was the result of independent recollection and what was the result of reading the report.
In the circumstances of this case, of course, § 54-142a does come into play. As the charges against Wanda Reyes were dismissed, § 54-142a(a) provides that "all police and court records . . . shall be erased" at the expiration of the appeal period. Erasure means, at a minimum, that information contained in the record is not to be disclosed to anyone. See § 54-142a(e) of the General Statutes. None of the exceptions seem applicable. Compare, e.g., § 54-142a(f) of the General Statutes.
The factual situation in the instant case would seem to be squarely on point with Hampton v. Manson, 5 Conn. App. 343, 346
(1985). In that case, criminal charges had been dismissed, and the officer involved in the criminal arrest testified in a parole revocation hearing based on the same transaction. As the criminal charge had been dismissed, the records were subject to erasure. The Appellate Court reached an accommodation: an officer may offer testimony when it is based on memory of the scene itself CT Page 387-Y and on personal knowledge; an officer may not offer testimony which is based solely on information from erased records.
There are, of course, some ironies lurking in the erasure requirements: here, for example, neither party would be able to take advantage of the erasure provisions had Wanda not been arrested, and Wanda apparently was not found to be not guilty; rather, she was able to participate in a pretrial diversion program. Also, as the officer apparently obtained the record from the plaintiff's counsel, it is probably true that the record was obtained before the case was even dismissed. Nonetheless, it has been the custom of the courts of this state to interpret the erasure provisions rather literally. See, e.g., Lechner v.Holmberg, 165 Conn. 152, 161-62 (1973).
In deciding this case, then, I am relying only on the testimony of Officer Duke which he said was based on independent memory of the event. This testimony includes Maria's waving down at least one car, Wanda's approaching at least one car, and drugs which were field-tested positive for narcotics being found on one of the parties. CT Page 387-Z
The second evidential issue concerns the chain of custody[2] of the substances found at the scene. Officer Duke testified that his partner found four bags of material that was tested positive.
He did not know precisely from where or from whom the drugs were taken. He did not label or mark the bags, and he did not deliver them to the evidence room. His knowledge of how seized substances were taken to the laboratory was spotty. Dr. Milzoff, dealing with the custody from the other end, was most knowledgeable as to procedures once the substances were received from the police, and I am satisfied as to the "chain of custody" once the materials reached the toxicology laboratory. Although there was testimony from Officer Duke about the police identification number, that information came from a record which I am constrained to hold is "erased."
The so-called chain of custody does not require a talismanic checklist; rather, the evidential determination involves a common sense inquiry as to whether the substance tested is "reasonably CT Page 387-AA probable" to be that taken at the scene, and that the substance is reasonably likely not to have been altered in any material way before being tested. State v. Burns, 23 Conn. App. 602, 614-15
(1990). In making the determination, the court is to consider the totality of the circumstances, including any reasonable opportunity for mistake or for tampering, but the state is not required to disprove all possibility of tampering or mistake.State v. Burns, supra.
On the facts of this case, I find that the block of unknown custody, that is, from the time of the field test to the arrival at the laboratory, is simply too great an obstacle for the plaintiff to meet, and it has not sustained its burden on this issue. Had Officer Livingston been available, or had the police incident report been admissible, the result might have been different. Because of this holding, I am disregarding the testimony of Dr. Milzoff in both cases.
 III
The defendant Maria Reyes claims that her notice to quit has CT Page 387-BB been rendered ambiguous by a second notice to quit, and the action as to her should therefore be dismissed. The evidence presented as to this issue is that the notice to quit on which this action is based was served on June 5, 1996. A second notice to quit, based on nonpayment of rent, was issued on July 15, 1996, and presumably served within a day or so of issuance. See Exhibit B.
While it is true, as the defendant argues, that a notice to quit must be an unequivocal act, the serving of a second notice to quit does not invalidate a prior notice to quit. Rather, the first notice to quit, if it is otherwise valid, serves to terminate the lease and creates a tenancy at sufferance, and any subsequent notice to quit is evaluated in that context. SeeBridgeport v. Barbour-Daniel Electronics, Inc., 16 Conn. App. 574
(1988). Thus, in the context of this case, the second notice to quit may be invalid, as there is no obligation to pay "rent" if the lease has been terminated. I am not persuaded by the theory advanced by the defendant to the effect that the service of a second notice to quit based on nonpayment (itself apparently a nullity) which does not contain the usual disclaimer as to the CT Page 387-CC future tender of rent, coupled with an immediate tender of rent, creates a new lease.
 IV
We turn, then, to the merits of the case against Maria Reyes. The complaint is that she used the premises for the illegal sale of drugs in violation of § 47a-11 (g) of the General Statutes, and thereby committed a serious nuisance, on July 27, 1995. It is true, as the plaintiff argues, that the act of flagging down cars, if done for the purpose of and in the course of knowingly facilitating unlawful drug transactions, would constitute proof of the alleged violation. See Hartford Housing Authority v.Rosada, SPH 81124, H-1057 (Housing Session 1995) (DiPentima, J.).
The evidence against Maria, as narrowed by the unusual evidential considerations in this case, is quite scanty, however. I find that she and her sister Wanda were on the premises of 134 Hampton Street, and that Wanda possessed a quantity of narcotic substance. Maria flagged down at least one car, in a manner consistent with, but not necessarily part of, a drug transaction. CT Page 387-DD I find, based on the positive field test and the testimony of Maria herself, that narcotic substances were seized from Wanda. Although the issue is a close one, I find that the plaintiff has not sustained its burden of the preponderance of the evidence as to Maria, as there are too many scenarios with the same evidence which are consistent with innocence.
 V
The case as to Wanda is on a somewhat different footing. As noted above, the testimony of Officer Duke in Maria's case was admitted as an exhibit in this case, as was the testimony of Dr. Milzoff, which has been subsequently disregarded. Officer Duke also testified, though far more briefly, in this case. Maria Reyes testified briefly in the case against Wanda as well: though she backed away from some of her prior statements in her own case, she did admit that police searched Wanda at the scene and found powder. Officer Duke, it will be recalled, testified that the substance was field-tested positive for illegal drugs.
As to Wanda, then, I find that she had leased premises at 93 CT Page 387-EE Hampton Street, which was part of the Stowe Village project.[3]
On the day in question, Wanda possessed at least four plastic packages of illegal drugs. On at least one occasion, she attempted to sell drugs to cars which had pulled over. The finding that the substance was illegal drugs is based on the testimony of Maria and on officer Duke. It is most significant that she failed to appear and testify: in the circumstance of a civil case, especially where the privilege against self-incrimination would apparently not be available because of the earlier dismissal, inferences may be drawn against Wanda for her unexplained failure to testify, and I have so drawn them in this case. While there may have been some explanation for the observed conduct, I will infer from her absence that she was in fact attempting, perhaps successfully, to sell drugs at the time.[4]
Judgment of possession may enter for the plaintiff against Wanda Reyes only. Judgment may enter in favor of the defendant Maria Reyes.
BEACH, J. CT Page 387-FF