STATE OF CONNECTICUT *v.* KEVIN C. BURNS
(7897)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued October 9—decision released December 11, 1990

*Christopher J. Hug,* special public defender, with whom, on the brief, was *Robert M. Appleton,* special public defender, for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *John Waddock,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, after a jury trial, of possession of cocaine with intent to sell in violation of General Statutes § 21a-277 (a), and possession of cocaine in violation of

General Statutes § 21a-279 (a).[1] The defendant claims that the trial court improperly (1) denied his motions to sever his trial from that of his codefendant, (2) failed to suppress evidence in violation of his state and federal constitutional rights, and (3) admitted certain evidence despite an insufficient chain of custody. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On October 31, 1987, at approximately 8 p.m., Officer Edward Kendall of the New Haven police department was driving an unmarked police van northbound on Hamilton Street. Kendall was accompanied in the van by Officer Joseph Pettola, who sat in the front passenger's seat, and by two other officers. At the intersection of Hamilton Street and Ives Place, the officers observed the defendant, Kevin Burns, and the codefendant, Angelo Reyes,[2] leaving a discotheque and walking toward a white Buick Riviera that was double parked facing north on Hamilton Street. The codefendants entered the car, which belonged to Reyes' girl friend. The officers recognized both Burns and Reyes. Reyes started the car, and Kendall pulled the van along the driver's side of the Buick. Pettola addressed Reyes through the window of the van asking him for his license, registration and insurance card, and informing him that double parking was illegal.

Burns was seated next to Reyes in the front passenger's seat of the car, and Kendall was able to observe him from behind the wheel of the van, because

---

[1] The defendant was acquitted of two additional charges, conspiracy to sell cocaine in violation of General Statutes §§ 53a-48 (a) and 21a-277 (a), and carrying a dangerous weapon in a motor vehicle in violation of General Statutes § 29-38.

[2] The codefendant, Angelo Reyes, was charged with the same offenses as was Burns. Following a joint trial, Reyes was convicted only of carrying a dangerous weapon in a motor vehicle in violation of General Statutes § 29-38.

Reyes had turned on the car's interior lights. Kendall saw Burns lean forward and place something under the front seat. Pettola also noticed Burns lean forward. Kendall, concerned for the officers' safety, walked around the rear of the vehicles to the passenger's side of the Buick and asked Burns to get out. Kendall also beckoned to the two officers in the rear of the van for assistance.

Kendall was aware that Burns had a prior criminal record involving assault and therefore feared that he might have secreted weapons under the seat when he bent over. As Burns walked to the rear of the Buick, Kendall scanned the interior of the car for weapons and saw a brown paper bag protruding from under the front passenger's seat. He retrieved the bag, felt a hard substance therein, opened the bag and discovered two plastic bags. One bag contained ten small plastic bags, each knotted and containing a white powder and rock substance. The second bag held four similar bags each containing a white substance. Kendall arrested Burns and directed Petolla to place Reyes under arrest. Burns was searched incident to the arrest and was found to possess an additional quantity of cocaine and $1192.

While Kendall was looking under the seat for the paper bag, he observed a man sitting behind the front passenger's seat, who was subsequently identified as Gordon Farrell. He was slumped down attempting to conceal himself. Once Burns and Reyes were in custody, Kendall opened the driver's door to get Farrell out of the car, and observed a .25 caliber automatic pistol on the floor between the door and the driver's seat. The gun, later found to be loaded, was seized by Kendall. Kendall then removed Farrell from the car, patted him down, interviewed him and released him. Neither the defendants nor Farrell had a permit to carry the weapon located in the car.

## I

Burns' first claim is that the trial court improperly denied his motions to sever that were made during the trial. The following additional facts are relevant to this claim. Prior to trial and jury selection, the state moved for joinder of the defendants' cases. Reyes did not object, but Burns objected claiming that the defenses were going to be antagonistic.[3] The court stated that mutual denial of ownership of the weapon and the drugs would not constitute antagonistic defenses, but defendant Burns indicated that he feared that Reyes would claim that the drugs found in the car belonged to him. Reyes' attorney, however, responded to this concern: "Your Honor, representing Mr. Reyes I can tell you right now he has no knowledge of the drugs. He can't say who they belong to." The state's motion for joinder was granted.

Burns maintains that Reyes' trial strategy was to show that the cocaine belonged to Burns. Burns alleged that Reyes' trial counsel attempted to show that Burns was the true owner of the cocaine on two occasions during the trial. The first occurred on cross-examination of Pettola.

"Q. Mr. Reyes got out of the car and handed you his paperwork?

---

[3] Although the defendant herein excepted to the overruling of his objection on the state's motion for joinder, he made it clear during oral arguments before this court that his first claim goes only to the denials of his motions to sever *during* the trial that were made during the cross-examinations of Gordon Farrell and Joseph Pettola. He had also moved to sever the cases during jury selection, which is also not part of his claim on appeal. During the trial, Burns moved to sever during Kendall's testimony on cross-examination by Reyes' attorney relative to the gun found. Since Burns was acquitted of the gun charge, he acknowledges that the denial of his motion to sever at that point was not prejudicial and, therefore, is also not including it as part of this claim.

"A. That's correct.

"Q. And you looked at the paperwork?

"A. Yes.

"Q. You were also conversing with Mr. Reyes?

"A. Yes.

"Q. When you were conversing with Mr. Reyes were you looking at Mr. Reyes?

"A. Mr. Reyes.

"Q. At any time did Mr. Reyes make any furtive movements in the car like he was putting something on the floor of the car?

"A. Not that I saw, no.

"Q. And when you were talking to Mr. Reyes you weren't looking at Mr. Burns?

"A. No.

"Q. Burns could have been doing anything at the time you were looking at the paperwork or talking to Mr. Reyes and you wouldn't know it.

"A. I wouldn't know.

"Q. But you did happen to see Mr. Burns bend over. That you caught.

"A. Yes."

Then during cross-examination of Gordon Farrell, a witness offered by Burns, Reyes' counsel inquired whether Farrell had kept Burns under constant surveillance from the back seat of the car. After Farrell responded in the negative, Reyes' counsel asked: "So you can't say for a fact that Mr. Burns didn't do anything wrong during that time."

Farrell replied, "I don't know."

Following the answer, Burns objected, and the jury was excused. Counsel argued and the court sustained the objection by the defendant because it called for speculation by Farrell.

The trial court enjoys wide latitude in determining whether substantial injustice is likely to result unless a separate trial is accorded. *State* v. *Vinal,* 198 Conn. 644, 648–49, 504 A.2d 1364 (1986). Our Supreme Court has stated that "[o]n appeal, we will reverse a trial court's ruling [denying severance] only where the trial court commits an abuse of discretion that results in manifest prejudice to one or more of the defendants." Id., 649.

A separate trial should be ordered where the defenses are antagonistic, or evidence will be introduced against one that would not be admissible against the codefendant, and it is clear that a joint trial will probably be prejudicial to the rights of one or more of the defendants. *State* v. *Smith,* 201 Conn. 659, 669, 519 A.2d 26 (1986); see *State* v. *Haskins,* 188 Conn. 432, 449–50, 450 A.2d 828 (1982). The test is whether substantial injustice is likely to result if a separate trial is not afforded. *State* v. *Varricchio,* 176 Conn. 445, 448, 408 A.2d 239 (1979). Because there is no claim that the court abused its discretion when it ordered the trials of Burns and Reyes to be consolidated, our inquiry must determine whether a joint trial resulted in manifest prejudice or substantial injustice, as the evidence was presented. *State* v. *Smith,* supra, 671.

Although testimony by one codefendant against another, and evidence admitted against one codefendant that would be inadmissible against another are not the only grounds necessitating a severance, the defendant seeking the severance bears the burden of showing that the defenses had become antagonistic during the course of trial. See *State* v. *King,* 187 Conn. 292, 309, 445 A.2d 901 (1982).

There is no claim that evidence had been or was about to be introduced against one codefendant that was inadmissible as to the other, nor any claim of inculpatory statements. The defendant asks us to examine the entire record and to conclude that antagonistic defenses existed.

The record shows that both of the defendants employed substantially identical defenses. They each asserted that the state could not prove who owned the contraband beyond a reasonable doubt. Although Reyes chose to testify and Burns did not, there was no showing that the defenses were even incompatible, not to mention, antagonistic. See *State* v. *Vinal,* supra, 652.

The defendant relies heavily upon *State* v. *Delarosa,* 16 Conn. App. 18, 547 A.2d 47 (1988). In *Delarosa,* the police arrested three men who were riding in a car containing narcotics. At trial, each of the defendants denied possession of the contraband. In the course of presenting their defenses, two of the codefendants adduced substantial evidence linking the remaining defendant to the narcotics. On appeal, this court found substantial prejudice to that defendant and remanded for a separate trial.

Unlike *Delarosa,* this case does not contain any prejudice to the defendant. Although Reyes denied any knowledge of the cocaine, he did not adduce any evidence linking Burns to the cocaine. The closest Reyes' counsel might have come to adducing evidence of a nexus between Burns and the contraband was during the direct examination of Farrell. Farrell was asked whether he could say for a fact that Burns did not do anything wrong while in the car. Although the answer "I don't know" came before the objection, the court sustained the objection and disallowed that line of questioning.

The jury acquitted both defendants of the conspiracy charge and Burns of the gun charge.[4] It cannot be argued that the verdict itself shows a substantial injustice. There was no conflict in the defenses so as to cause the jury to infer unjustifiably that this conflict alone demonstrates that both are guilty; nor does the record demonstrate that Burns' convictions were in any way a result of his codefendant's success in urging the jury to accept his testimony allegedly exculpating himself but inculpating Burns. See, e.g., *State* v. *Taylor,* 21 Conn. App. 244, 247, 572 A.2d 1045, cert. denied, 215 Conn. 818, 576 A.2d 548 (1990).

After a careful examination of the record, we conclude that the trial court properly denied the defendant's motion to sever.

---

[4] The court instructed that the evidence presented by the state had to be separately considered in arriving at separate verdicts as follows: "Actually, you have been trying two separate cases and I am sure you are aware of that. One of these is the state of Connecticut against Kevin Burns and the other is the state of Connecticut against Angelo Reyes. There are two separate files and two separate informations and you will have each information with you in the jury room. Now in the interest of time and convenience these cases have been tried together. This is due to the fact that the evidence offered by the state at least in some respects and in most respects overlaps in both cases so that the accuseds, who may also be referred to as the defendants, have been presented and their cases tried simultaneously. You are instructed that your findings in one case do not in and of themselves establish a basis of a similar finding in the other case. For all practical purposes the defendants are to be considered by you as on trial separately. That is to say, one may be found guilty of one or more of the offenses that he is charged with and the other may be found not guilty of one or more of those same offenses, or both may be found not guilty or guilty according to however you find the evidence and the facts to be and the law as I explain it to you. Each defendant is to be considered as if he was on trial alone for the various offenses with which each one of them stands charged. You will be required therefore to render separate verdicts upon each defendant as to each count which means in effect you will be required to render eight separate verdicts because we have four counts directed at each defendant. The four counts being the same criminal charges."

## II

Burns' second claim is that the court improperly failed to suppress evidence found in the automobile and on his person. He argues that his actions demonstrate an expectation of privacy in the car and, therefore, give him standing to assert a violation of his constitutional rights. Burns conceded that he was neither the owner nor the operator of the car but merely a passenger, so the court found that he did not demonstrate standing to object to the search of the Buick. The court further found that he was legally arrested, which made the search of his person a lawful search incident to that arrest. We agree with the trial court that Burns did not have standing to challenge the search of the vehicle because he had no reasonable expectation of privacy regarding the search of Reyes' girl friend's car and the seizure of the paper bag containing cocaine.

" 'A person may not object to the introduction of evidence resulting from an illegal search unless he first proves that he was a victim of that search. . . . One is a victim of a search when it violates his reasonable expectation of privacy in the area searched. . . . Therefore, the first question that must be answered in any suppression case is whether the individual who seeks suppression had a reasonable expectation of privacy in the area searched.' " (Citations omitted.) *State* v. *Manson,* 13 Conn. App. 220, 222, 535 A.2d 829 (1988), quoting *State* v. *Daay,* 5 Conn. App. 496, 498, 500 A.2d 248 (1985). An individual has a reasonable expectation of privacy if he subjectively believes that the area will remain private, and that belief is one that society is willing to recognize as reasonable. *State* v. *Haynes,* 7 Conn. App. 550, 552, 509 A.2d 557 (1986).

"A passenger in a motor vehicle, who fails to demonstrate a possessory interest in the car itself or in any

of the seized evidence, has no reasonable expectation of privacy in the area of the vehicle searched, and thus, he is precluded from contesting the validity of the search. *State* v. *Manson,* 13 Conn. App. 220, 223, 535 A.2d 829 (1988)." *State* v. *Delarosa,* supra, 32. The defendant acknowledges that he was merely a passenger and that mere passengers in an automobile are generally regarded as lacking a legitimate expectation of privacy in that car. Having failed to assert a possessory interest in the car, Burns also failed to claim a possessory interest in the paper bag found under the seat, because his defense was a disclaimer of the knowledge of its existence.

The defendant argues that his affirmative action of placing the bag under the seat demonstrated an expectation of privacy. Although this action may arguably show a possible subjective expectation of privacy, there was no evidence to show such expectation was reasonable. As we have held previously, "the defendant did not show that he subjectively believed that the bag would remain hidden either by introducing direct evidence of his belief, or by introducing circumstantial evidence from which the trial court could have inferred such a belief. Nor did he introduce evidence showing that any subjective expectation of privacy that he had was reasonable. He did not, for example, claim that he owned the bag, although he could have done so without running the risk of having that testimony used to prove his guilt of the possession charge. *Simmons* v. *United States,* 390 U.S. 377, 394, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)." *State* v. *Haynes,* supra, 553.

Accordingly, because Burns has not been able to establish an expectation of privacy in the area of the automobile that was searched, he has no standing to challenge the constitutionality of the search. Because

Burns is unable to challenge the search of the vehicle, he cannot challenge the arrest or the search made incident to it.

## III

The defendant claims that the trial court improperly allowed the envelope and its contents into evidence as the state had failed to establish a sufficient chain of custody.

After Kendall had discovered the bag and had examined its contents, he closed it and returned it to its original location where it was photographed. He then took the bag and its contents to police headquarters where he observed Pettola field-test the powder. Kendall placed his initials on the paper bag and also on the two plastic bags found therein. These were then placed inside a plastic evidence bag that, in turn, was placed in a large manilla envelope on which was written Kendall's name, the date, the case number, the names of the defendants, and a description of the contents. The small plastic bag found on the defendant's person was also initialed and placed in the evidence envelope. The envelope was then placed in a safe in the police department property room. Kendall testified that the paper bag and the two plastic bags appeared to be in the same condition at trial as when he placed them in the evidence envelope, which also appeared unchanged except that it had been unsealed.

Charles Reading, a state toxicologist, identified the evidence envelope, recognizing it by its distinctive evidence number and by the red tape that he had initialed and used to seal the envelope. After opening the envelope, Reading examined the contents and explained how each was marked. After looking at the lab report, Reading indicated that the items had been transported from the police station to the lab by his courier on November 5, 1987. On cross-examination, Reading explained

that although the report stated that Officer Mark Corporale had delivered the evidence to the lab, Corporale had in fact delivered it to the courier, who brought it to the lab. After its arrival at the lab, the envelope was opened by the evidence clerk and was checked to ensure that the material signed for was actually received. The envelope was then sealed and placed in a vault. Reading removed the envelope from the vault and conducted qualification tests to determine the purity of the cocaine. His assistant conducted the other tests on the drugs and returned them to Reading at the end of the day. The evidence was returned to the vault where it was kept until April 12, 1988, when it was turned over to an investigator from the office of the state's attorney. The only persons having access to the vault were Reading, two other toxicologists and the vault custodian.

Burns alleges a break occurred in the continuity of the chain of custody during the transport of the evidence and that, without testimony from Corporale, a missing link exists that is compounded by the missing testimony of the courier. Burns also alleges that there were improper gaps in the chain of custody while the evidence was being tested at the state lab on November 13, 1987, and while the lab had possession of the substances. He claims that the state must prove that the possibility of tampering with the evidence was not likely and that it did not do so.

The court has broad discretion in this evidentiary issue; *State* v. *Johnson,* 162 Conn. 215, 233, 292 A.2d 903 (1972); and it may not be overturned except for a clear abuse of discretion. *State* v. *Pollitt,* 205 Conn. 61, 88, 530 A.2d 155 (1987). " 'The state's burden with respect to chain of custody is met by a showing that there is a "reasonable probability" that the substance has not been changed in important respects. *State* v. *Jones,* 167 Conn. 228, 239–40, 355 A.2d 95 (1974); *State*

v. *Johnson,* [supra, 232]. "The court must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it . . . ." *State* v. *Piskorski,* 177 Conn. 677, 697, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).' *State* v. *Nieves,* 186 Conn. 26, 31 n.4, 438 A.3d 1183 (1982) . . . ." (Citation omitted.) *State* v. *Greene,* 209 Conn. 458, 479, 551 A.2d 1231 (1988).

There is no hard and fast rule that the state must exclude or disprove all possibility that the article or substance has been tampered with. *State* v. *Johnson,* supra. An object must be shown to be in substantially the same condition as when the crime was committed. *State* v. *Pollitt,* supra.

No evidence was presented indicating that the evidence in this case was tampered with. The court was well within the limits of its discretion in reasonably concluding that the evidence was not tampered with, either during transportation or while at the state lab where it would be highly unlikely that "intermeddlers" would tamper with the evidence.

The judgment is affirmed.

In this opinion the other judges concurred.