## STATE OF CONNECTICUT *v.* JESUS GONZALEZ
### (SC 17556)

Sullivan, C. J., and Borden, Norcott, Katz and Vertefeuille, Js.*

* The listing of justices reflects their seniority status on this court as of the date of argument.

342

Argued February 10—officially released May 30, 2006

*Omar A. Williams*, deputy assistant public defender, for the appellant (defendant).

*Julia K. Conlin*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John P. Doyle*, assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The sole issue in this appeal is whether the defendant, Jesus Gonzalez, had a reasonable expectation of privacy in statements that he made to police officers, who had answered a cellular telephone that the defendant had called, believing it to be in possession

of a third party, to whom the defendant intended to sell narcotics. The defendant appeals[1] from the trial court's judgment of conviction, rendered following a conditional plea of nolo contendere pursuant to General Statutes § 54-94a,[2] of one count of possession of narcotics with the intent to sell in violation of General Statutes § 21a-277 (a).[3] He claims that the trial court improperly

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution." See also Practice Book § 61-6 (2) (i) ("When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's [a] motion to suppress evidence based on an unreasonable search or seizure, [b] motion to suppress statements and evidence based on the involuntariness of a statement, [c] or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. . . .").

[3] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

denied his motion to suppress incriminating statements that he made to police and the fruits thereof, namely, narcotics seized from his automobile. Specifically, the defendant contends that, because he had a reasonable expectation of privacy in the telephone call, the officers' answering of it violated his rights under the fourth and fourteenth amendments to the United States constitution.[4]

The trial court's memorandum of decision reveals the following undisputed facts. "At 12 p.m. on November 25, 2003, at the intersection of Fillmore Street and Grand Avenue, [Officer Bennett Hines of the New Haven police department's intelligence unit] observed a white female, later identified as Maria Nonamaker, approach an unknown Hispanic male. Based upon prior investigations, Hines knew Nonamaker to be a drug addict. Hines observed Nonamaker engage in a hand-to-hand drug transaction in which money was exchanged for narcotics. A field interview and a *Terry*[5] patdown check of Nonamaker was conducted soon thereafter. . . . During the patdown check, Hines discovered that Nonamaker was in possession of five glassine bags, the contents of which field tested positive for heroin. As a result, Nonamaker was placed under arrest and read her *Miranda*[6] rights, which she waived. . . . Nonamaker was then transported to the intersection . . .

---

[4] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The fourth amendment has been made applicable to the states via the fourteenth amendment. *State* v. *Eady*, 249 Conn. 431, 436, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 55, 145 L. Ed. 2d 428 (1999).

[5] *Terry* v. *Ohio*, 392 U.S. 1, 24, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[6] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

whereupon she positively identified Luis Fonseca as the individual who sold her the heroin.

"Prior to the positive identification of Fonseca, Hines contacted Officer Daniel Hartnett and Detective Ottoniel Reyes, who proceeded to the [previously] mentioned intersection. . . . These three officers observed Fonseca closely for approximately twenty minutes. Following what appeared to be further illegal drug activity by Fonseca, Hartnett and Reyes conducted a field interview of Fonseca as he was nearing the entrance to his home. Fonseca produced a valid Connecticut state identification card . . . and carried $60 in cash and a cellular telephone. No weapons or narcotics were found on Fonseca.

"Reyes further testified that . . . Fonseca's cellular telephone . . . rang constantly during the field interview. Hines testified that it is common practice for drug dealers to use cellular telephones in conducting their business. Reyes, who is fluent in Spanish, answered Fonseca's cellular telephone. Fonseca neither gave Reyes permission to answer his cellular telephone nor protested. A male, Spanish speaking caller told Reyes that he wanted to 'resupply' him. In Reyes' opinion, the caller apparently believed Reyes was Fonseca. The caller instructed Reyes to meet him at the intersection of Blatchley Avenue and Clay Street, a location approximately two blocks away. Thereafter, Fonseca was released when a warrant check showed he had no active warrants.[7] . . . Reyes confiscated Fonseca's cellular telephone as evidence.

"Hartnett, Hines and Reyes proceeded to the prearranged location. After waiting approximately five minutes, a red van arrived at the intersection. At that

---

[7] Hines testified that the officers decided to release Fonseca for fear that, had they arrested him at that time and location, their actions would have been detected by a lookout and the operation would have been compromised.

point, Fonseca's cellular telephone rang again, and Reyes answered it. The caller told Reyes that he was waiting in the red van. Hartnett and Reyes exited an unmarked police vehicle and saw the driver of the van holding a cellular telephone to his ear with his left hand. Hartnett observed the driver making furtive movements with his right hand. [The officers asked the driver] to step out of the vehicle. A patdown search was conducted for weapons.[8] In plain view on the front seat, Hartnett observed an electronic scale and a handcuff key. The interior portion of the van was searched incident to the arrest, and twenty-five glassine bags were located secreted within an air vent . . . [that was in] the same area where the driver had made furtive movements just moments earlier. The contents of the glassine bags . . . field tested positive for heroin. The driver [subsequently identified as the defendant] was placed under arrest." (Citations omitted.)

The state charged the defendant with various narcotics offenses and, following the trial court's denial of his motion to suppress evidence resulting from the officers' use of Fonseca's cellular telephone, the defendant ultimately entered a conditional plea of nolo contendere to one count of possession of narcotics with the intent to sell in violation of § 21a-277 (a). The trial court rendered a judgment of conviction in accordance with this plea and sentenced the defendant to eight years incarceration, execution suspended after twenty-seven months, followed by three years conditional discharge. This appeal followed.

On appeal, the defendant argues that the trial court improperly concluded that he lacks "standing" to contest the legality of the officers' warrantless use of Fonseca's cellular telephone under both the fourth amendment of the United States constitution and article

---

[8] The officers' search of the defendant's person revealed a " '[b]uck knife approximately [five] inches long.' "

first, § 7, of the Connecticut constitution.[9] The state, in response, contends that the trial court properly concluded that the defendant lacked "standing"[10] under both of the provisions at issue. We agree with the state's contention that the defendant's fourth amendment claim is unavailing.

Accordingly, "[w]e begin with the applicable standard of review. Our standard of review of a trial court's

[9] Although the defendant purports to invoke the more protective provisions of the Connecticut constitution, he does not, in his opening brief, provide any specific, independent support for his state constitutional arguments. We reiterate that "we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004). Although, in his reply brief, the defendant ultimately does provide analysis of his state constitutional argument under the factors set forth in *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), "[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 373 n.36, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). Accordingly, we granted the state's motion to strike portions of the defendant's reply brief discussing his state constitutional claims. See *State* v. *Sinvil*, supra, 518 n.1. We, therefore, confine our analysis to the defendant's federal constitutional claims. See *State* v. *Eady*, 249 Conn. 431, 435 n.6, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

[10] Although it does not change our inquiry in the present case, we note that the United States Supreme Court has eschewed referring to the question of whether a person has a reasonable expectation of privacy in a place or object search as implicating notions of " 'standing.' " *Rakas* v. *Illinois*, 439 U.S. 128, 139–40, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). Rather, the court in *Rakas* stated: "[W]e think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the [f]ourth [a]mendment, rather than on any theoretically separate, but invariably intertwined concept of standing." Id., 139; see also *State* v. *Morrill*, 197 Conn. 507, 540–41, 498 A.2d 76 (1985) ("[i]n *Rakas* . . . prior concepts of standing to contest an illegal search were abandoned in favor of an inquiry that focused directly on the substance of the defendant's claim that he or she possessed a legitimate expectation of privacy in the area searched" [citation omitted; internal quotation marks omitted]). Accordingly, we construe the trial court's conclusion that, because the defendant had no reasonable expectation of privacy in Fonseca's cellular telephone, he lacked standing to challenge the legality

findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . None of the trial court's factual findings is in dispute. Because these issues raise questions of law, our review is plenary." (Internal quotation marks omitted.) *State v. Pink*, 274 Conn. 241, 258, 875 A.2d 447 (2005).

"Fourth [a]mendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. . . . A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his [f]ourth [a]mendment rights infringed. . . . And since the exclusionary rule is an attempt to effectuate the guarantees of the [f]ourth [a]mendment . . . it is proper to permit only defendants whose [f]ourth [a]mendment rights have been violated to benefit from the rule's protections." (Citations omitted; internal quotation marks omitted.) *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). Consequently, the Supreme Court has long held that a reasonable expectation of privacy[11] in the subject of a search

of the officers' actions, as a determination on the merits that the defendant's fourth amendment claim was unavailing.

[11] Although the term "reasonable expectation of privacy" originated in Justice Harlan's concurring opinion in *Katz v. United States*, 389 U.S. 347, 360–61, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) ("first . . . a person [must] have exhibited an actual [subjective] expectation of privacy and, second, the expectation [must] be one that society is prepared to recognize as reasonable" [internal quotation marks omitted]), it has since gained widespread acceptance in both state and federal jurisprudence. See, e.g., *Kyllo v. United States*, 533 U.S. 27, 33, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001) ("As Justice Harlan's oft-quoted concurrence described it, a [f]ourth [a]mendment search occurs when the government violates a subjective expectation of

is a prerequisite for fourth amendment protection. Id., 146. The burden of proving the existence of a reasonable expectation of privacy rests on the defendant. See *California* v. *Ciraolo*, 476 U.S. 207, 211, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986); *State* v. *Hill*, 237 Conn. 81, 92–93, 675 A.2d 866 (1996) ("[t]he defendant bears the burden of establishing the facts necessary to demonstrate a basis for [finding that he possessed a reasonable expectation of privacy]" [internal quotation marks omitted]). "In order for the defendant to demonstrate that he had a reasonable expectation of privacy in the [evidence]: (1) he must have manifested a subjective expectation of privacy with respect to the [evidence]; and (2) that expectation must be one that society would consider reasonable." *State* v. *Bernier*, 246 Conn. 63, 71, 717 A.2d 652 (1998).

In the present case, the defendant contends that he possessed a reasonable expectation of privacy in statements made during a call placed to a cellular telephone when he neither knew nor attempted to ascertain the identity of the person to whom he was speaking. As the trial court properly concluded in its succinct and cogent memorandum of decision, the defendant's contention is without merit.

It is axiomatic that "[e]ach party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear

privacy that society recognizes as reasonable. . . . We have subsequently applied this principle to hold that a [f]ourth [a]mendment search does not occur—even when the explicitly protected location of a house is concerned—unless the individual manifested a subjective expectation of privacy in the object of the challenged search, and society [is] willing to recognize that expectation as reasonable." [Citation omitted; internal quotation marks omitted.]); *State* v. *Bernier*, 246 Conn. 63, 71, 717 A.2d 652 (1998) ("[i]n order for the defendant to demonstrate that he had a reasonable expectation of privacy in the [evidence]: [1] he must have manifested a subjective expectation of privacy with respect to the [evidence]; and [2] that expectation must be one that society would consider reasonable").

the conversation. When such takes place there has been no violation of any privacy of which the parties may complain." *Rathbun* v. *United States*, 355 U.S. 107, 111, 78 S. Ct. 161, 2 L. Ed. 2d 134 (1957). As the United States Court of Appeals for the Third Circuit has stated: "Insofar as the [f]ourth [a]mendment is concerned, one party to a telephone conversation assumes the risks that the other party (a) will permit a third party to eavesdrop on an extension telephone, for the purpose of communicating what he heard to the police, or (b) may be a police informer who will relate or record or transmit a conversation to the authorities, or (c) may record the conversation and deliberately turn it over." *United States* v. *Lee*, 359 F.3d 194, 216 (3d Cir. 2004).

The fact that the party to whom the defendant had spoken was not his intended listener, but a police officer who had answered the telephone for the purpose of obtaining incriminating information, is of no consequence. The Supreme Court has acknowledged the "necessity of undercover work and the value it often is to effective law enforcement." *Weatherford* v. *Bursey*, 429 U.S. 545, 557, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977). Indeed, the Supreme Court has clearly stated that deceptive statements made by an officer for the purpose of incriminating a criminal defendant generally do not implicate the fourth amendment because "[t]he risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak." (Internal quotation marks omitted.) *Hoffa* v. *United States*, 385 U.S. 293, 303, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966). Accordingly, in the present case, the officers did not offend the fourth amendment simply because they were not the intended recipients of the defendant's telephone call. See id.

Furthermore, we disagree with the defendant's contention that the authorities relied upon by the trial court, specifically *United States* v. *Congote*, 656 F.2d 971 (5th Cir. 1981), do not support its conclusion that the defendant lacked a reasonable expectation of privacy in Fonseca's cellular telephone. Contrary to the defendant's assertion, *Congote* is highly persuasive. In that case, federal agents, acting on information conveyed by an informant, entered and searched an apartment believed to be a cocaine distribution center without first procuring a warrant. Id., 972–73. While inside the apartment, the agents answered the telephone several times when it rang. Id., 973. One such call was placed by the defendant, who, thinking that the agents were employees of the apartment owner, expressed his dismay about not receiving payment for several kilograms of cocaine. Id. The defendant was arrested after meeting with the agents, ostensibly to discuss payment for the cocaine in question. Id. The defendant subsequently moved to suppress his incriminating statements, but the District Court denied his motion, concluding that, although the initial search of the home was unlawful, the defendant lacked a reasonable expectation of privacy therein and, accordingly, was not afforded fourth amendment protection. Id.

The Fifth Circuit Court of Appeals, analogizing to the federal wiretapping statutes, but discussing the constitutional ramifications of the agents' actions, affirmed the District Court's judgment, stating: "In the instant case, the only interception of the telephone calls was by a party to the conversation. He did not record or transcribe them in any way. Moreover, [the defendant] instituted the calls and spoke voluntarily and without hesitation to the agents. None of the agents pretended to be . . . the party [the defendant] wished to reach. [The defendant] had no legitimate expectation of privacy in his telephone conversation with the agents. He

assumed the risk of exposure when he spoke freely with strangers." (Internal quotation marks omitted.) Id., 976.

As aptly noted by the trial court, the facts of the present case bear a striking resemblance to those presented in *Congote*. In each case, the governmental actors procured access to the telephone through a warrantless search[12] and *received* a call from a party who, making no effort to ascertain the identity of the person to whom he was speaking, voluntarily arranged a sale of narcotics. The trial court, therefore, properly relied on *Congote* in reaching its conclusion.

The defendant attempts to distinguish *Congote*, claiming that the court therein based its decision on that defendant's lack of a reasonable expectation of privacy in his codefendant's apartment, whereas the defendant in the present case bases his argument on "the sanctity of his telephonic communications . . . ." Specifically, the defendant states: "In the present case, the defendant readily concedes that he has no [reasonable expectation of privacy] to challenge the police seizure of his codefendant's physical property (the cellular telephone itself) . . . but [a reasonable expectation of privacy] does exist in the protection of the defendant's own words from unreasonable police searches." Significantly, the defendant cites no authority for this sweeping proposition.

Although, under certain circumstances, a person may have a reasonable expectation of privacy in a telephone conversation; see, e.g., *Katz* v. *United States*, 389 U.S. 347, 353, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (defendant had reasonable expectation of privacy in telephone con-

---

[12] In the present case, the trial court did not reach the merits of the defendant's challenge to the propriety of the officers' initial answering and confiscation of Fonseca's cellular telephone. Although we, too, find it unnecessary to resolve this issue, we assume, for purposes of comparison to *Congote*, the illegality of the officers' initial search and seizure of Fonseca's cellular telephone.

versation when he spoke to known third party from confines of enclosed telephone booth); no such expectation exists when the speaker voluntarily speaks to someone whose identity he has made no attempt to ascertain. In *Katz*, the Supreme Court based its decision that the defendant possessed a reasonable expectation of privacy on the fact that he deliberately shielded his conversation from prying ears. Id., 352. In that case, federal agents had electronically monitored the defendant's conversation *with a third party*, after the defendant had enclosed himself within a telephone booth. Id., 348. The court concluded: "[W]hat [the defendant] sought to exclude when he entered the booth was not the intruding eye—it was the uninvited ear. He did not shed his right to do so simply because he made his calls from a place where he might be seen. No less than an individual in a business office, in a friend's apartment, or in a taxicab, a person in a telephone booth may rely upon the protection of the [f]ourth [a]mendment. One who occupies it, shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world." Id., 352.

*Katz*, therefore, is inapposite to the circumstances of the present case, wherein the defendant spoke directly to a police officer because of his own factual misapprehension. "[A] police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's [f]ourth [a]mendment rights." (Internal quotation marks omitted.) *United States* v. *Caceres*, 440 U.S. 741, 750, 99 S. Ct. 1465, 59 L. Ed. 2d 733 (1979).

Accordingly, because the defendant spoke voluntarily with police and made no effort to ascertain the

identity of the person to whom he spoke, he lacked a reasonable expectation of privacy in his words spoken during his call to Fonseca's cellular telephone. The trial court, therefore, properly denied his motion to suppress.

The judgment is affirmed.

In this opinion the other justices concurred.