******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* PHIL KINCH
(AC 37433)
(AC 37434)

Beach, Alvord and Gruendel, Js.

*Argued April 12—officially released September 6, 2016*

(Appeal from Superior Court, judicial district of Fairfield, geographical area number two, Cronan, J.)

*Gwendolyn S. Bishop*, assigned counsel, for the appellant (defendant).

*Matthew R. Kalthoff*, deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *Richard L. Palombo, Jr.*, senior assistant state's attorney, and *Marc R. Durso*, assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. This case involves an investigatory stop of a motor vehicle. The defendant, Phil Kinch, appeals from the judgments of conviction, rendered after jury trials, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and failure to appear in the first degree in violation of General Statutes § 53a-172 (a) (1). On appeal, the defendant claims that the trial court improperly denied his motion to suppress certain evidence. He further maintains that, should he prevail on that claim, his conviction for failure to appear also must be set aside. We affirm the judgments of the trial court.

The relevant facts are largely undisputed. On the evening of July 12, 2011, members of the Bridgeport Police Department were conducting surveillance in the vicinity of 740 Ellsworth Street (property), which was considered a "hot zone" due to the prevalence of violent crime in that area. A multistory apartment complex with a small parking lot was located on the property.

From an unmarked police vehicle, Sergeants Bradford Seely and Ronald Mercado were on the lookout for an individual with a "weird walk . . . a weird gait" who allegedly "had been robbing people in this neighborhood numerous times within the past few weeks . . . ." At approximately 11 p.m., they observed an individual with a distinctive gait wearing a red shirt and black pants, who met with a "black male, a white male and a white female" as he approached the property. At that time, Seely placed a request over police radio for the assistance of a marked police vehicle to "help identify the individual wearing the red shirt and the black pants."[1]

Officers Manual Santos and Bobby Jones, who were on patrol in a marked police vehicle, responded to Seely's request. When they arrived at the property, they observed three individuals walking toward a black Toyota Scion XD (vehicle) in the parking lot. Those individuals then entered that vehicle. At that time, the officers were "acting on orders to stop parties in that [parking] lot." Santos observed a white male in the driver's seat, a white female in the front passenger seat, and a black male in the rear passenger seat of the vehicle. At the suppression hearing, Santos identified the defendant as the individual in the rear passenger seat.

As they parked their patrol car behind the vehicle, the officers observed "a lot of movement going on" in the vehicle. Santos testified that "both the driver and the front right passenger, the female, they just kept looking towards the rear of the vehicle, the rear compartment to the passenger that was in the rear, [their] hands were moving, their heads were moving, they kept looking at us and . . . looking at this rear seated pas-

senger." Santos, who was dressed in full uniform, exited his patrol car and approached the driver's side of the vehicle with a flashlight in hand. As Santos "was looking at the rear passenger [from outside the vehicle, he] observed on the floor next to his feet . . . a small digital scale, a clear plastic Ziploc type sandwich bag which had a white or off-white type substance inside it. [He] observed . . . a blood cigarette, which . . . is a cigarette wrapper with contraband in it that someone would smoke. [He] also observed a brown paper bag that had cigar tubes kind of protruding from it." All three individuals then exited the vehicle and were placed under arrest. At that time, the police seized various items from the vehicle.

The defendant was charged with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b). He thereafter filed a motion to suppress the evidence seized from the vehicle.[2] In that motion, the defendant alleged that the "seizure and search *of the vehicle* occupied by the defendant were conducted by members of the Bridgeport Police Department without a valid warrant, without probable cause, without reasonable and articulable suspicion, and not incident to a lawful arrest." (Emphasis added.)

At the outset of the June 27, 2013 suppression hearing, the state claimed that the defendant lacked standing to contest the validity of the search of the vehicle, arguing that "[i]t was not his car and prior court cases have indicated that a person who's a backseat passenger in a car that he does not own does not have standing to object to the search of that vehicle." In response, the defendant argued that he was entitled to proceed pursuant to *Brendlin* v. *California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). Perhaps mindful that a reasonable expectation of privacy analysis entails a fact specific inquiry; see *State* v. *Boyd*, 295 Conn. 707, 718, 992 A.2d 1071 (2010), cert. denied, 562 U.S. 1224, 131 S. Ct. 1474, 179 L. Ed. 2d 314 (2011); the court did not act on the state's motion at that time, stating, "All right. I'll allow the matter to go forward."[3]

The only two witnesses at that hearing were Seely and Santos. At the conclusion of their testimony, the state renewed its claim that the defendant lacked standing to contest the seizure of the evidence in question. The state argued that the present case was "very similar" to *State* v. *Thomas*, 98 Conn. App. 542, 550–51, 909 A.2d 969 (2006), cert. denied, 281 Conn. 910, 916 A.2d 53 (2007), in which this court recognized that "[a] passenger in a motor vehicle, who fails to demonstrate a possessory interest in the car itself or in any of the seized evidence, has no reasonable expectation of privacy in the area of the vehicle searched, and . . . is precluded from contesting the validity of the search." (Internal quotation marks omitted.) In response, the

defendant again directed the court's attention to *Brendlin* v. *California*, supra, 551 U.S. 249. In rendering its oral decision, the court stated, "I'm . . . denying the state's motion on the standing, and I'm going to deny the motion to suppress." The court then detailed the basis of its determination that the officers possessed a reasonable and articulable suspicion of criminal activity at the time of their encounter with the defendant.

A jury trial followed, at the conclusion of which the defendant was found guilty of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b). The defendant was scheduled to be sentenced on September 11, 2013, but did not appear at that proceeding. Approximately two months later, the court sentenced the defendant to a term of twelve years incarceration, execution suspended after eight years, with four years of special parole.

As a result of his failure to appear for sentencing on September 11, 2013, the defendant was arrested and charged with one count of failure to appear in the first degree. The defendant pleaded not guilty to that charge. After a trial, the jury found the defendant guilty. The court rendered judgment accordingly and sentenced the defendant to a term of two years incarceration, to be served consecutive to his sentence on his conviction for possession of narcotics with intent to sell. This consolidated appeal of the judgments of conviction for possession of narcotics with intent to sell and failure to appear followed.

I

The defendant first claims that the court improperly denied his motion to suppress the evidence seized from the vehicle because the investigatory stop by police was not supported by a reasonable and articulable suspicion of criminal activity. The state concedes that "the seizure of the vehicle's occupants was not supported by a reasonable and articulable suspicion that criminal activity was afoot." The state nonetheless maintains that, because the defendant did not establish a reasonable expectation of privacy in the vehicle, the court's ruling on the motion to suppress must be affirmed on the alternate ground that the defendant lacked standing to contest the search of the vehicle.[4] We agree with the state.[5]

"[S]tanding is a fundamental requirement of jurisdiction." (Internal quotation marks omitted.) *State* v. *Johnson*, 301 Conn. 630, 642, 26 A.3d 59 (2011). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put

in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . .” (Internal quotation marks omitted.) *State* v. *Long*, 268 Conn. 508, 531, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004). The question of standing presents an issue of law over which our review is plenary. *Weiss* v. *Smulders*, 313 Conn. 227, 239, 96 A.3d 1175 (2014); see also *State* v. *Kalphat*, 285 Conn. 367, 374, 939 A.2d 1165 (2008) (issues raising questions of law in context of motion to suppress subject to plenary review).

In conducting that plenary review, the factual findings underlying a court’s decision on a motion to suppress “will not be disturbed unless [they are] clearly erroneous in view of the evidence and pleadings in the whole record. . . . [H]owever, when a question of fact is essential to the outcome of a particular legal determination that implicates a defendant’s constitutional rights, and the credibility of witnesses is not the primary issue, our customary deference to the trial court’s factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court’s factual findings are supported by substantial evidence.” (Internal quotation marks omitted.) *State* v. *DeMarco*, 311 Conn. 510, 519, 88 A.3d 491 (2014).

A

As a preliminary matter, we note that the parties presented differing views of the applicable legal standard at the suppression hearing. The state relied on Connecticut precedent, and *State* v. *Thomas*, supra, 98 Conn. App. 542, in particular. In *Thomas*, this court held in relevant part that “[i]n order to challenge a search or seizure on fourth amendment grounds, a defendant must show that he has a reasonable expectation of privacy in the place searched. . . . A passenger in a motor vehicle, who fails to demonstrate a possessory interest in the car itself or in any of the seized evidence, has no reasonable expectation of privacy in the area of the vehicle searched, and thus, he is precluded from contesting the validity of the search. . . . [B]ecause the defendant did not establish an expectation of privacy in the areas of the automobile that were searched, he has no standing to challenge the constitutionality of the search.” (Citations omitted; internal quotation marks omitted.) Id., 550–51; see also *State* v. *Gonzalez*, 278 Conn. 341, 348–49, 898 A.2d 149 (2006) (“the [United States] Supreme Court has long held that a reasonable expectation of privacy in the subject of a search is a prerequisite for fourth amendment protection” [footnote omitted]).

By contrast, the defendant at the suppression hearing submitted that he possessed standing to contest the validity of the search of the vehicle pursuant to *Brendlin* v. *California*, supra, 551 U.S. 249. In *Brendlin*, the United States Supreme Court addressed the question

of whether, when a police officer makes a traffic stop, a passenger in the motor vehicle "is seized within the meaning of the [f]ourth [a]mendment." Id., 251. The court answered that query in the affirmative, stating that "a passenger is seized . . . and so may challenge the constitutionality of the stop." Id. The defendant in that case was a passenger in a motor vehicle that was stopped to verify the validity of a temporary operating permit. Id., 251. During the course of the investigatory stop, the police discovered that the defendant "was a parole violator with an outstanding no-bail warrant for his arrest." Id., 252. The police thus ordered the defendant to exit the vehicle and placed him under arrest. Id. When they then conducted a search "incident to [that] arrest, they found an orange syringe cap on his person." Id. A subsequent search of the vehicle disclosed "tubing, a scale, and other things used to produce methamphetamine." Id.

Significantly, *Brendlin* concerned only the seizure of a passenger, and not the search of the vehicle itself. As the United States Supreme Court made clear, the defendant "moved to suppress the evidence obtained in the searches of his person and the car as fruits of an unconstitutional seizure, arguing that the officers lacked probable cause or reasonable suspicion to make the traffic stop. He did not assert that his Fourth Amendment rights were violated by the search of [the] vehicle, cf. *Rakas* v. *Illinois*, [439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)],[6] but claimed *only* that the traffic stop was an unlawful seizure of his person." (Emphasis added; footnote added.) Id., 253. *Brendlin* therefore has little bearing on the question of whether a passenger has standing to challenge the search of a motor vehicle and the seizure of items contained therein.[7] See, e.g., *United States* v. *Wilbourn*, 799 F.3d 900, 908 (7th Cir. 2015) ("Passengers in cars stopped by police are deemed 'seized' for Fourth Amendment purposes and are entitled to challenge the constitutionality of the detention. *Brendlin* v. *California*, [supra, 551 U.S. 249]. This principle, however, does not extend so far that it recognizes a legitimate expectation of privacy for passengers who do not have a possessory interest in a vehicle."); *United States* v. *Symonevich*, 688 F.3d 12, 19 (1st Cir. 2012) (explaining that *Brendlin* does "not extend Fourth Amendment rights to passengers who challenge only the search of the vehicle in which they were traveling"); *Atkins* v. *Commonwealth*, 57 Va. App. 2, 12, 698 S.E.2d 249 (2010) ("[b]y its own language, *Brendlin* does not address whether a passenger can challenge the legality of a search of the vehicle in which he is a passenger").

It therefore is not surprising that, in the years since *Brendlin* was decided, the appellate courts of this state have adhered to the reasonable expectation of privacy standard in assessing whether a defendant possesses the requisite standing to contest the search of a motor

vehicle or items discovered therein. See, e.g., *State* v. *Boyd*, supra, 295 Conn. 718; *State* v. *Michael D.*, 153 Conn. App. 296, 304–305, 101 A.3d 298, cert. denied, 314 Conn. 951, 103 A.3d 978 (2014); *State* v. *Jevarjian*, 124 Conn. App. 331, 338, 4 A.3d 1231 (2010), appeal dismissed, 307 Conn. 559, 58 A.3d 243 (2012); *State* v. *Vallejo*, 102 Conn. App. 628, 635–36, 926 A.2d 681, cert. denied, 284 Conn. 912, 931 A.2d 934 (2007). Accordingly, to "meet this rule of standing, the defendant must demonstrate that he had a reasonable expectation of privacy in the area or subject of the search." *State* v. *Kimble*, 106 Conn. App. 572, 583, 942 A.2d 527, cert. denied, 286 Conn. 912, 950 A.2d 1289 (2008).

B

With that legal standard in mind, we turn our attention to the present case. Following a suppression hearing, the court orally denied the state's request to deny the motion to suppress for lack of standing. Because a determination that the defendant possessed a reasonable expectation of privacy was a necessary prerequisite to the court's conclusion that the defendant had standing to contest the search of the vehicle; see *State* v. *Davis*, 283 Conn. 280, 313, 929 A.2d 278 (2007) ("a defendant may not invoke the fourth amendment to challenge the legality of a search unless he first can establish a legitimate expectation of privacy in the area searched"); the issue is whether such a determination is substantiated by the record before us.

"The burden of proving the existence of a reasonable expectation of privacy rests on the defendant." *State* v. *Gonzalez*, supra, 278 Conn. 349; see also *State* v. *Kalphat*, supra, 285 Conn. 375 (defendant bears burden of establishing facts necessary to demonstrate basis for standing). To establish a reasonable expectation of privacy, the defendant bore the burden of demonstrating both (1) that he manifested a subjective expectation of privacy in the area of vehicle searched and (2) that his expectation was one that society would consider reasonable. See *State* v. *Boyd*, supra, 295 Conn. 718. Yet the defendant did not offer any testimonial or documentary evidence whatsoever at the suppression hearing. The defendant did not testify at that hearing and at no time did he assert a possessory interest in either the vehicle or the items discovered therein.[8] Put simply, the record is bereft of any evidence of such an interest.

Our precedent instructs that "[p]assengers in an automobile, neither claiming nor demonstrating a possessory interest in the automobile, generally are regarded as lacking a reasonable expectation of privacy in the automobile." *State* v. *Kimble*, supra, 106 Conn. App. 584; accord *United States* v. *Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015) ("a mere passenger does not have standing to challenge a vehicle search where he has neither a property nor a possessory interest in the automobile" [internal quotation marks omitted]); *State* v.

*Burns*, 23 Conn. App. 602, 612, 583 A.2d 1296 (1990) ("[t]he defendant acknowledges that he was merely a passenger and that mere passengers in an automobile are generally regarded as lacking a legitimate expectation of privacy in that car"); *State* v. *Delarosa*, 16 Conn. App. 18, 32, 547 A.2d 47 (1988) ("[a] passenger in a motor vehicle, who fails to demonstrate a possessory interest in the car itself or in any of the seized evidence, has no reasonable expectation of privacy in the area of the vehicle searched, and thus, he is precluded from contesting the validity of the search"); cf. *Rakas* v. *Illinois*, supra, 439 U.S. 148–49 (passenger in vehicle generally does not have expectation of privacy in vehicle's glove compartment, trunk, or underseat area); *United States* v. *Barber*, 777 F.3d 1303, 1305 (11th Cir. 2015) (distinguishing between passenger's "expectation of privacy in a car" and "a passenger's expectation of privacy in a bag within a car" and holding that defendant "had standing to challenge the search of his bag, even if he lacked standing to contest the search of the car"); *People* v. *Lewis*, 217 App. Div. 2d 591, 593, 629 N.Y.S.2d 455 (1995) ("the defendant had a reasonable expectation that the privacy of the locked briefcase entrusted to him [by his uncle] would be maintained" when found on backseat of vehicle he was driving).

In addition, it is a fundamental tenet of fourth amendment jurisprudence that a defendant has no reasonable expectation of privacy in contraband that plainly is visible to officers outside the vehicle. See *Texas* v. *Brown*, 460 U.S. 730, 740, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983) ("[t]here is no legitimate expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by . . . diligent police officers" [citation omitted]); *United States* v. *Rascon-Ortiz*, 994 F.2d 749, 754 (10th Cir. 1993) ("there is no legitimate expectation of privacy in a car's interior if an officer looks through the car's window and observes contraband in plain view"); *United States* v. *Ramos*, 960 F.2d 1065, 1067 (D.C. Cir. 1992) ("the fourth amendment provides protection to the owner of only a container that conceals its contents from plain view").

A review of the record reveals that the defendant was merely a passenger in a vehicle in which contraband was discovered, which contraband Santos observed from the outside of the vehicle. We agree with the state that the present case is materially indistinguishable from *State* v. *Thomas*, supra, 98 Conn. App. 542, in which "[t]he defendant conceded . . . that he was merely a passenger and claimed neither an ownership nor a possessory interest in the [vehicle] or in any of the seized items. He also has not shown a reasonable expectation of privacy in the areas of the [vehicle] that were searched." Id., 551. For that reason, this court concluded that the defendant "has no standing to challenge the constitutionality of the search." Id. That logic

compels a similar conclusion in the present case.

Because the issue of standing was raised at the outset of the suppression hearing, it was incumbent on the defendant to provide an evidentiary basis on which the trial court reasonably could conclude that he possessed an expectation of privacy in the rear floor area of the vehicle where the evidence was seized.[9] See *State* v. *Gonzalez*, supra, 278 Conn. 348–49 ("a reasonable expectation of privacy in the subject of a search is a prerequisite for fourth amendment protection"[footnote omitted]). It nevertheless remains that the defendant presented no evidence of such an expectation of privacy. Cf. *United States* v. *McCaster*, United States Court of Appeals, Docket No. 94–599968 (6th Cir. October 19, 1995) (defendant "lacked a reasonable expectation of privacy in . . . the bag of cocaine found in plain view on floorboard" of acquaintance's vehicle); *State* v. *Reldan*, 100 N.J. 187, 203, 495 A.2d 76 (1985) (floor of vehicle not area "entitled to a justifiable expectation of privacy"). Given that dearth of evidence, the defendant cannot meet his burden of establishing a reasonable expectation of privacy in the area of the vehicle searched. See *State* v. *Burns*, supra, 23 Conn. App. 612 (defendant lacked standing to contest search because "there was no evidence to show" he possessed reasonable expectation of privacy); *State* v. *Haynes*, 7 Conn. App. 550, 553, 509 A.2d 557 (1986) ("[T]he defendant did not show that he subjectively believed that the bag would remain hidden either by introducing direct evidence of his belief, or by introducing circumstantial evidence from which the trial court could have inferred such a belief. Nor did he introduce evidence showing that any subjective expectation of privacy that he had was reasonable."). Indeed, the defendant has not identified any evidence of such an expectation in his appellate brief.[10]

On our careful review of the record of the suppression hearing, we conclude that there is no basis on which the court could find that the defendant satisfied his burden of proving the existence of a reasonable expectation of privacy in the area of the vehicle searched. He thus lacked standing to challenge the legality of that search. Accordingly, the denial of the defendant's motion to suppress was not improper.

II

In light of our resolution of that claim, the defendant cannot prevail on his ancillary contention that his conviction for failure to appear must be vacated because it stems from an improper verdict on the underlying charge of possession of narcotics with intent to sell. As the defendant acknowledges in his appellate brief, that claim is entirely dependent on the success of his fourth amendment challenge to the search of the vehicle and seizure of the evidence recovered therefrom. Given our disposition in part I of this opinion, this ancillary

claim too must fail.[11]

The judgments are affirmed.

In this opinion the other judges concurred.

[1] In his testimony, Seely explained that he requested the assistance of a marked police vehicle because "we had an unmarked police vehicle that we didn't want to, what we call, burn. The vehicle [is] used to conduct surveillances and . . . [we] try to stay undercover throughout the operation."

[2] Specifically, the defendant sought to suppress "(1) [o]ne large plastic sandwich bag containing an off-white substance; (2) [o]ne brown colored blunt type cigarette; (3) [o]ne brown paper bag containing three green colored cigar tubes; (4) [o]ne AMW digital scale; (5) [o]ne medium sized ziplock clear plastic bag with a red apple print on it and containing numerous smaller red tinted ziplock type clear plastic baggies and five clear sandwich bags; (6) [o]ne hundred and sixty ($160.00) dollars in US currency."

[3] In so doing, the court provided the defendant with the opportunity to establish his standing to contest the validity of the search of the vehicle.

[4] It is well established that we may "affirm the court's judgment on a dispositive alternate ground for which there is support in the trial court record." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 188, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); see also *State* v. *John*, 210 Conn. 652, 679–80, 557 A.2d 93 (appellate court "is free to sustain a ruling on a different basis from that relied upon by the trial court"), cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

[5] Because we conclude that the defendant lacked "standing to challenge the legality of a search and seizure under both the fourth amendment to the United States constitution and article first, § 7, of the constitution of Connecticut"; *State* v. *Kimble*, 106 Conn. App. 572, 582, 942 A.2d 527, cert. denied, 287 Conn. 912, 950 A.2d 1289 (2008); we do not consider the merits of such a challenge. See, e.g., *Minnesota* v. *Carter*, 525 U.S. 83, 91, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998) ("[b]ecause we conclude that respondents had no legitimate expectation of privacy in the apartment, we need not decide whether the police officer's observation constituted" illegal search); *State* v. *Jevarjian*, 307 Conn. 559, 566–67, 58 A.3d 243 (2012) (declining to reach merits of challenge to legality of search when "the defendant lacked standing to contest the search of the recreational vehicle because he did not have a reasonable expectation of privacy therein"); *State* v. *Pierre*, 139 Conn. App. 116, 128–29, 54 A.3d 1060 (2012) (declining to address defendant's claim that statement should be suppressed as "fruit of the poisonous tree" where defendant did not have reasonable expectation of privacy in area searched), aff'd, 311 Conn. 507, 88 A.3d 489 (2014); *State* v. *Manson*, 13 Conn. App. 220, 221–22, 535 A.2d 829 (1988) (where defendant passenger claimed that police lacked sufficient articulable grounds to conduct investigatory stop and that court improperly denied motion to suppress, court held that "[u]nless this defendant can establish . . . that he had a reasonable expectation of privacy in the area of the vehicle searched, we need not reach those claims with respect to him").

[6] In *Rakas* v. *Illinois*, supra, 439 U.S. 143, the United States Supreme Court recognized that a person has standing to raise a fourth amendment challenge to a search of a motor vehicle only if that person can demonstrate "a legitimate expectation of privacy in the invaded place." As our Supreme Court has observed, "[a]bsent such an expectation, the subsequent police action has no constitutional ramifications." (Internal quotation marks omitted.) *State* v. *Mooney*, 218 Conn. 85, 94, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

[7] We reiterate that the defendant, in his June 17, 2013 motion to suppress, challenged the "search and seizure *of the vehicle* occupied by the defendant . . . ." (Emphasis added.) That motion contains no claim regarding any seizure of the defendant himself.

[8] Santos indicated at the suppression hearing that the defendant was not the owner of the vehicle.

[9] Santos testified at the suppression hearing that the digital scale, the plastic bag containing an off-white substance, the cigarette containing contraband, and the bag containing cigar tubes all were located "[o]n the floor board of the vehicle . . . near the [defendant's] feet."

[10] The defendant did not file a reply brief in this appeal.

[11] We therefore express no opinion as to the viability of the defendant's claim.