## STATE OF CONNECTICUT *v.* JOSEPH ALEXANDER JAMES
## (AC 25328)

DiPentima, Gruendel and Dupont, Js.

52

Argued October 21, 2005—officially released January 3, 2006

*Matthew J. Costello,* with whom was *Nicholas P. Cardwell,* for the appellant (defendant).

*Lisa A. Riggione,* senior assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's

attorney, and *Victor Carlucci, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Joseph Alexander James, entered a plea of nolo contendere to the charges of criminal attempt to possess a controlled substance with intent to sell in violation of General Statutes §§ 53a-49[1] and 21a-277 (b),[2] and possession of a controlled

[1] General Statutes § 53a-49 provides: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a) of this section, it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[2] General Statutes § 21a-277 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as

substance with intent to sell in violation of General Statutes § 21a-277 (b), and appeals from the denial of his motion to suppress, which he filed pursuant to General Statutes § 54-94a. Specifically, he claims that the arresting police officers improperly advised him of his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and that he did not knowingly and intelligently waive his *Miranda* rights. At oral argument, counsel for the defendant waived his first claim. We therefore need only address the defendant's second claim on appeal. The defendant argues that the totality of the circumstances demonstrates that he did not knowingly and intelligently waive his *Miranda* rights. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the defendant's claims on appeal. After a "controlled delivery"[3] of a package con-

authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

[3] On June 5, 1997, Federal Express Corporation (Federal Express) informed the West Hartford police that the company's drug-sniffing dogs had detected marijuana in two boxes addressed to Har-Conn. Chrome Company (Har-Conn) in West Hartford. With the Federal Express manager present, the West Hartford police officers unsealed the boxes at the Federal Express office in East Hartford and found a blue Igloo cooler in each box. The two large Igloo coolers contained approximately forty-eight pounds of marijuana between them. The presence of marijuana was confirmed by a test by police prior to delivery of the package to Har-Conn. The detectives removed much of the marijuana from one of the boxes and replaced it with sand and other weights before delivering the package to Har-Conn.

According to Detective Paul Melanson of the West Hartford police department, that procedure is known as a "controlled delivery." The procedure consists of removing and replacing most of the contraband, and then delivering the altered package to its destination and checking to see who will accept it there. If the delivery circumstances so warrant, the police will then arrest the recipient. In this case, the defendant was the recipient, or the intended recipient, of the packages and was arrested on Har-Conn's premises, pursuant to the "controlled delivery" procedure of the police.

taining marijuana by an undercover police detective to the defendant's workplace in West Hartford, the defendant was arrested. Gregory Palmquist, an officer with the West Hartford police department, transported the defendant to the West Hartford police barracks, where Palmquist processed the defendant. Prior to transferring the defendant from the booking area to the detective's office for interrogation, Paul Melanson, a detective with the West Hartford police department, orally advised the defendant of his *Miranda* rights. Melanson then brought the defendant to William Wallace, another detective with the West Hartford police department. Melanson informed Wallace that the defendant had been advised of the *Miranda* rights and that the defendant was willing to discuss the incident. During the interview with Wallace, the defendant made incriminating statements. After approximately twenty minutes, the defendant ceased talking and the interview was terminated.

The defendant filed a motion to dismiss the charges on the ground that the police lacked probable cause to arrest him. During an evidentiary hearing on that motion, the defendant made an oral motion to suppress certain evidence consisting of his written confession and a Federal Express Corporation shipping receipt that was discovered on him in a search incident to his arrest. The court granted that motion to suppress, concluding that the police lacked probable cause to arrest the defendant. The suppression led to the dismissal of the charges.

After the case was dismissed, the state immediately moved for permission to file an appeal pursuant to General Statutes § 54-96.[4] The court refused to grant

[4] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

the state permission to appeal. The state appealed from the court's denial of permission. *State* v. *James*, 64 Conn. App. 495, 779 A.2d 1288 (2001), rev'd, 261 Conn. 395, 802 A.2d 820 (2002). This court rejected the state's claims and dismissed the appeal for lack of subject matter jurisdiction, noting that the trial court's grant of permission to appeal under § 54-96 is a jurisdictional prerequisite. Id., 501.

The state thereafter appealed to our Supreme Court, which held that this court improperly dismissed the appeal because the trial court abused its discretion in denying the state permission to appeal. *State* v. *James*, 261 Conn. 395, 410, 802 A.2d 820 (2002). The Supreme Court further determined that "the trial court improperly concluded that, as a matter of law, there was no probable cause to arrest the defendant." Id. The case was remanded to this court "with direction to reverse the trial court's judgment of dismissal and to remand the case to the trial court with direction to deny the motion to suppress and for further proceedings according to law." Id., 420.

On remand, the defendant filed a motion to suppress his statements to police officers on the ground that his *Miranda* waiver was invalid.[5] After a hearing on the motion to suppress, the court denied the motion. The defendant thereafter entered a conditional plea of nolo contendere to criminal intent to possess a controlled substance with intent to sell and possession of a controlled substance with intent to sell. Pursuant to § 54-94a, the defendant's plea was entered on the condition that he have the right to pursue an appeal from the court's denial of the motion to suppress. On April 6, 2004, the court sentenced the defendant to a total effective term of three and one-half years incarceration. On

---

[5] The defendant's motion on remand raises grounds different from those in his previous motions to suppress.

April 14, 2004, the defendant filed his appeal from the court's decision denying the motion to suppress.[6] Additional facts will be set forth as necessary.

"As an initial matter, we set forth our standard of review. Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Hernandez*, 87 Conn. App. 464, 469, 867 A.2d 30, cert. denied, 273 Conn. 920, 871 A.2d 1030 (2005). Under the clearly erroneous standard, "[w]e cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation

[6] We note that the record does not contain a memorandum of decision or signed transcript setting forth the trial court's reasons for its denial of the motion to suppress, as required by Practice Book § 64-1. When the record does not contain either a written memorandum of decision or a transcribed copy of an oral decision signed by the trial court stating the reasons for its decision, this court frequently has declined to review the claims on appeal because the appellant has failed to provide the court with an adequate record for review. See, e.g., *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 607–608, 710 A.2d 190 (1998). If there is an unsigned transcript on file in connection with an appeal, the claims of error raised by the defendant may be reviewed if this court determines that the transcript adequately reveals the basis of the trial court's decision. See *Tisdale* v. *Riverside Cemetery Assn.*, 78 Conn. App. 250, 254 n.5, 826 A.2d 232, cert. denied, 266 Conn. 909, 832 A.2d 74 (2003). Additionally, when we determine that any of the issues raised on appeal present purely questions of law warranting plenary review, the issues may be reviewed despite the absence of a memorandum of decision or signed transcript because the legal analysis undertaken by the trial court is not essential to this court's consideration of the issues on appeal. See, e.g., *Norwalk* v. *Farrell*, 80 Conn. App. 399, 406 n.10, 835 A.2d 117 (2003). Because we conclude that the transcript adequately reveals the basis of the court's decision, we will review the claims of error raised by the defendant.

marks omitted.) *Boccanfuso* v. *Green*, 91 Conn. App. 296, 306, 880 A.2d 889 (2005).

"To be valid, a waiver must be voluntary, knowing and intelligent. . . . The state has the burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his *Miranda* rights. . . . Whether a purported waiver satisfies those requirements is a question of fact that depends on the circumstances of the particular case." (Citations omitted; internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 50, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

"Whether the defendant has knowingly and intelligently waived his rights under *Miranda* depends in part on the competency of the defendant, or, in other words, on his ability to understand and act upon his constitutional rights. . . . Factors which may be considered by the trial court in determining whether an individual had the capacity to understand the warnings include the defendant's experience with the police and familiarity with the warnings . . . his level of intelligence, including his IQ . . . his age . . . his level of education . . . his vocabulary and ability to read and write in the language in which the warnings were given . . . intoxication . . . his emotional state . . . and the existence of any mental disease, disorder or retardation." (Internal quotation marks omitted.) Id., 51. "Although the issue [of whether there has been a knowing and voluntary waiver] is . . . ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence." *State* v. *Harris*, 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983).

The defendant claims that language, intellect and hearing impairments prevented him from executing a knowing and intelligent waiver of his *Miranda* rights. The transcript contradicts the defendant's claim. The record reveals that the defendant was approximately forty-one years old at the time of his arrest, advisement and statement. The defendant had no prior experience with police. Although he was born in and remained a citizen of Jamaica, he lived in the United States for more than twenty years. The defendant was not under the influence of alcohol or narcotics at the time of his waiver. By all accounts, the defendant appeared to be in a calm emotional state. All four officers testified that they had extensive communication with the defendant in English, or observed other officers communicating with the defendant, that the defendant had expressed no difficulty understanding English and that he had responded appropriately in English.

The defendant had formal schooling in Jamaica to at least the seventh grade. That education was provided in English. The defendant was licensed to drive a motor vehicle in Connecticut. In Connecticut, the driver's license test requires that an applicant read questions and choose the appropriate response to written questions during the written exam. He also was employed at Har-Conn. Chrome Company (Har-Conn) in West Hartford for more than fifteen years and owned a beauty salon with his wife.

The transcript reveals that the defendant testified at trial in English and that he responded to the questions of both counsel appropriately. The court noted that his hearing and ability to respond improved significantly as the hearing progressed. A supervisor at Har-Conn testified that the defendant, by all accounts, was able to comprehend and to communicate orally in English. While in custody, the defendant did not inform police officers that he suffered from a hearing impairment.

The court also observed that the defendant did not request an interpreter or a hearing enhancement device during the suppression hearing. The court expressly found that he was not suffering from a hearing defect that could have affected his ability to understand his rights.

The defendant testified that if the police asked him a question that he understood, he would answer the question. The defendant also testified that if police asked him a question that he did not understand, he would not respond. Melanson testified that he orally advised the defendant of the *Miranda* rights and asked the defendant if he understood those rights. According to Melanson, the defendant answered in the affirmative when asked if he understood the rights and desired to waive them to speak with police. "An express written or oral waiver is strong proof of the validity of the waiver." (Internal quotation marks omitted.) *State* v. *Reynolds*, supra, 264 Conn. 52. Although a written waiver is a more reliable form of evidence, an oral waiver relates only to the credibility of the state's witnesses and does affect the validity of the waiver. See, e.g., *State* v. *Whitaker*, 215 Conn. 739, 756, 578 A.2d 1031 (1990); *State* v. *Kuskowski*, 200 Conn. 82, 86–88, 510 A.2d 172 (1986).

After the defendant waived his rights and spoke with the police, he invoked his right to stop answering questions. Our Supreme Court has held that "the [invocation] of the right to remain silent after an initial willingness to speak with police is a strong indication that the defendant understood his rights." (Internal quotation marks omitted.) *State* v. *Reynolds*, supra, 264 Conn. 52–53.

The record reveals that there was substantial evidence to support the court's finding that the defendant knowingly, intelligently and voluntarily waived his

rights. Additionally, after a thorough and careful review of the record, we are not left with a firm and definite conviction that the court mistakenly made such a finding. As such, we conclude that the court's finding was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.