# STATE OF CONNECTICUT *v.* FREDERICK PAYNE
## (AC 29828)

Gruendel, Harper and Robinson, Js.

Argued September 22, 2009—officially released May 25, 2010

*Christopher Y. Duby*, special public defender, for the appellant (defendant).

*Robin S. Schwartz*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Brian K. Sibley, Sr.*, assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Frederick Payne, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the third degree as an accessory in violation of General Statutes §§ 53a-103 and 53a-8 (a), larceny in the fifth degree as an accessory in violation of General Statutes §§ 53a-125a and 53a-8 (a), engaging the police in a pursuit in violation of General Statutes § 14-223 (b) and interfering with an officer in violation of General Statutes § 53a-167a (a).[1] The defendant claims (1) that the court improperly denied his motion to suppress evidence seized by the police from an automobile he had been driving during the events at issue and (2) that the court's consciousness of guilt instruction likely misled the jury. We decline to review either claim and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 4:25 a.m. on May 20, 2006, the defendant broke into a New Haven package store. The defendant removed alcoholic beverages and boxes of cigarettes from the store and placed them in the passenger compartment of an automobile parked nearby. After

---

[1] Although § 53a-167a (a) was amended in 2008; see Public Acts 2008, No. 08-150, § 52; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

The court also found that the defendant's criminal conduct violated a conditional discharge imposed following an unrelated criminal proceeding. The court imposed a total effective sentence of 126 months of incarceration.

the defendant's activities tripped the store's alarm system and a resident living near the store dialed 911 to report the break-in, police officers headed to the store to investigate. A police officer en route to the scene in his police cruiser observed the defendant driving from the store at a high rate of speed. The officer, who had activated the siren and police lights on his cruiser, pursued the defendant for a brief period of time along city streets before the defendant crashed the automobile that he was operating into the front of a residence. The automobile came to rest on the steps and front porch of the residence, causing significant property damage.

Following the crash, the defendant exited the automobile and fled on foot into the backyard of the residence. The officer who was pursuing the defendant ordered the defendant to stop, but the defendant did not obey this command. The officer pursued the defendant on foot, and, following a brief struggle during which the defendant pushed and struck the officer, the officer physically restrained him. After searching the automobile driven by the defendant at the crash site following the defendant's apprehension, police seized several unopened containers of alcoholic beverages and cigarettes, valued at $301.13, from the passenger compartment of the automobile. The defendant's arrest followed.

I

First, the defendant claims that the court improperly denied his motion to suppress the evidence, including the alcoholic beverages and cigarettes, seized by the police following their warrantless search of the automobile he was driving. We conclude that the record is not adequate to review this claim.

The defendant filed the motion to suppress prior to the presentation of evidence, and, outside of the jury's presence, the court held an evidentiary hearing on the

motion. The defendant claimed that the items seized were the fruits of an unlawful search under the federal and state constitutions.[2] At the conclusion of the hearing, the state argued that the police action was constitutionally permissible on a variety of grounds. In particular, the prosecutor asserted that the circumstances at issue, involving the defendant's flight from the crashed automobile, supported an "abandonment claim . . . ." In this regard, the prosecutor stated that, at the time of the search, the police did not have any information concerning the owner of the automobile, as "the [police check of the] registration did not come back to [the defendant]," and it was not until the suppression hearing that the defendant claimed ownership of the automobile.

In an oral ruling following the hearing, the court denied the motion to suppress. The record contains the unsigned transcript of that ruling. The transcript reflects the court's findings with regard to the circumstances surrounding the search and seizure generally, as well as the court's conclusion that four independent bases supported the legality of the search and seizure. The court referred to its reliance on the plain view exception to the warrant requirement, the automobile exception to the warrant requirement, the inevitable discovery doctrine and "abandonment . . . ." On appeal, the defendant challenges the court's conclusion that any of these four principles applied to the search and seizure at issue. To prevail, the defendant must demonstrate that none of the four legal bases on which

---

[2] It does not appear that the court addressed a state constitutional claim in its ruling, and, on appeal, the defendant does not analyze his claim independently under our state constitution. Accordingly, we will confine our analysis to the right against unreasonable search and seizure guaranteed by the federal constitution. See, e.g., *State* v. *Dyson*, 238 Conn. 784, 794, 680 A.2d 1306 (1996) ("[b]ecause the defendant has failed to provide any independent analysis under the state constitution, we limit our analysis to the federal constitution").

the court relied supported the denial of his motion to suppress.

Under our rules of practice, the trial court is required to state its decision, either orally or in writing, in ruling on motions to suppress evidence. Practice Book § 64-1 (a) (4). The decision of the trial court "shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor. . . ." Practice Book § 64-1 (a). "It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. . . ." Practice Book § 61-10.

As a preliminary matter, the form of the court's decision that appears in the record is not proper; the defendant has not presented this court with a memorandum of the court's oral decision that has been signed by the trial judge in accordance with Practice Book § 64-1 (a). The record does not reflect that the defendant attempted to remedy this defect in accordance with the procedure set forth in Practice Book § 64-1 (b). This defect in the presentation of the appeal, however, does not hamper our review of the present claim because we are able to identify readily the court's decision, encompassing its findings, in the transcript before us. See, e.g., State v. Muhammad, 117 Conn. App. 181, 184 n.1, 979 A.2d 501 (2009).

With regard to its ultimate conclusion that "abandonment" was a ground on which to deny the motion to suppress, the court stated the following in its decision: "Counsel indicates for the state abandonment. Given the fact that the testimony reveals that upon attempting to elude the police and not responding to their call— to their stop, either in the automobile as well as on foot, that he, in fact, abandoned the property and therefore relinquished the knowing right to that property by his

abandonment. Further testimony is that, at least he claims he purchased the vehicle . . . and it was not registered and the owner was unknown at the time. At any rate, to the extent that the motion to suppress the items seized in the search—there are a variety of bases to support the search, including the plain view, automobile exceptions, [that] support the police conduct in terms of the automobile, including if you will, abandonment as well as inevitable discovery and the plain view [exception to the warrant requirement] supporting the seizure by the patrol officer."

The defendant claims that the court improperly relied on the abandonment doctrine as such doctrine is applied in search and seizure law. The defendant argues that the court impermissibly concluded as a matter of law that, by virtue of his flight from the automobile, that he had relinquished a right to privacy in the items seized from the automobile. Essentially, the defendant argues that the court improperly concluded that his flight from the automobile "equate[d] to the abandonment of a privacy right for purposes of search and seizure analysis."

In reviewing the court's ultimate conclusion that the doctrine of abandonment legally justified the search and seizure, we first must ascertain the factual and legal basis of the court's decision. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 278 Conn. 341, 347–48, 898 A.2d 149 (2006).

After carefully reviewing the court's entire decision, we are unable to ascertain the factual or legal basis for the court's reliance on the abandonment doctrine. The court concluded that the defendant had "relinquished the knowing right to [the] property by his abandonment." This statement, however, reasonably is susceptible to different interpretations. It is unclear whether the court's reference to "property" encompassed the automobile or the contents of the automobile. On a more fundamental level, it is unclear whether the court was referring to the defendant's *privacy* interest in the property or his *possessory* interest in the property. "[I]t is incumbent upon the [defendant] to take the necessary steps to sustain [his] burden of providing an adequate record for appellate review. . . . Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by [any appellate court] respecting [the defendant's claims] would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Canales*, 281 Conn. 572, 583–84, 916 A.2d 767 (2007); see also *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005) ("[s]peculation and conjecture have no place in appellate review"). A reviewing court does not presume error; if the party challenging the trial court's ruling has not satisfied its burden of demonstrating that the ruling was factually or legally untenable, a reviewing court must presume that the trial court properly reached its decision. See, e.g., *State* v. *Cooper*, 227 Conn. 417, 434, 630 A.2d 1043 (1993); *State* v. *Koslik*, 116 Conn. App. 693, 704–705, 977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916 (2009); *State* v. *Mathis*, 59 Conn. App. 416, 422 n.3, 757 A.2d 55, cert. denied, 254 Conn. 941, 761 A.2d 764 (2000). Accordingly, we decline to review the

defendant's claim and do not grant relief on the basis of this claim.[3]

---

[3] Apparently, the concurring opinion does not challenge our determination that the trial court's legal analysis as to the abandonment issue is patently unclear and susceptible to multiple interpretations. The concurring opinion, reasoning that a clearly stated explanation of the court's legal analysis is not a necessary predicate for appellate review of this constitutional issue, concludes that the record is adequate for this court to review the issue de novo. In so reasoning, the concurring opinion explicitly focuses on the objective reasonableness of the defendant's expectation of privacy, ultimately concluding that "any subjective expectation of privacy held by the defendant was objectively unreasonable."

Respectfully, we disagree with this approach for several reasons. One of the consequences of the trial court's scant legal analysis of this claim is that the court failed to make factual findings consistent with a proper analysis of the abandonment issue. Thus, the trial court never set forth a finding concerning the issue that is central to our analysis—whether the defendant expected privacy in the automobile or its contents. A legally proper analysis of abandonment in the context of a fourth amendment claim requires a determination by the court as to whether a defendant who has claimed a fourth amendment privilege had abandoned a reasonable expectation of privacy in the invaded area. See *State* v. *Oquendo*, 223 Conn. 635, 658, 613 A.2d 1300 (1992); *State* v. *Mooney*, 218 Conn. 85, 108, 588 A.2d 145 (en banc), cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). If such a reasonable expectation of privacy is lacking, a defendant's fourth amendment challenge to a search of the invaded area necessarily must fail. See *State* v. *Morrill*, 197 Conn. 507, 540–42, 498 A.2d 76 (1985).

A proper resolution of the issue presented requires more than a factual determination of the circumstances surrounding the search generally. It requires that the court make a finding of fact concerning the defendant's subjective intent. Only after finding that a defendant expected privacy in the invaded area should the court determine as a matter of law whether such intent objectively was reasonable and, thus, worthy of fourth amendment protection. See *United States* v. *Lee*, 916 F.2d 814, 818 (2d Cir. 1990) ("In determining whether there has been an abandonment, the district court must focus on the intent of the person who is purported to have abandoned the property. . . . Since this inquiry is necessarily factual, we will uphold the district court's finding unless clearly erroneous." [Citations omitted; internal quotation marks omitted.]); *United States* v. *D'Avanzo*, 443 F.2d 1224, 1226 (2d Cir.) ("Whether there has been an abandonment presents a question of intent. Like other factual findings by a district court we may disturb [the district court's] finding that the defendants relinquished any interest they may otherwise have had in protecting the privacy of [the area invaded] only if the finding is clearly erroneous."), cert. denied, 404 U.S. 850, 92 S. Ct. 86, 30 L. Ed. 2d 89 (1971). The United States Court of Appeals for the Tenth Circuit aptly explained the relevant inquiry as follows: "[The] test of abandonment subsumes both a subjective and an objective component. . . . Findings of subjective intent are findings of fact, which we review

only under a clearly erroneous standard. However, a determination of whether the defendant retained an objectively reasonable expectation of privacy in the property that society will recognize is a question of law that we review de novo." (Citation omitted.) *United States* v. *Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997); see also *United States* v. *Denny*, 441 F.3d 1220, 1227 (10th Cir.), cert. denied, 549 U.S. 914, 127 S. Ct. 256, 166 L. Ed. 2d 200 (2006). The issue of whether a defendant has abandoned a reasonable expectation of privacy in the area searched is conceptually indistinguishable from what our case law frequently has deemed "standing" to contest an illegal search. See *State* v. *Kalphat*, 285 Conn. 367, 374–75, 939 A.2d 1165 (2008); *State* v. *Hill*, 237 Conn. 81, 92–93, 675 A.2d 866 (1996).

In the present case, the court did not determine whether the defendant expected privacy in the invaded area. The concurring opinion reasons that this omission is inconsequential because "that line of inquiry need not be addressed if any such expectation held by the defendant is objectively unreasonable." Thus, the concurring opinion, reviewing a trial court decision that is devoid of a proper factual analysis of the claim, disposes of the claim on purely constitutional grounds. Even if we were to assume that the court's analysis of abandonment properly was rooted in fourth amendment principles, as opposed to property law, it is patently unclear whether the trial court applied the doctrine of abandonment because it found that the defendant did not expect privacy in the automobile or its contents at the time of the search *or* whether the court applied the doctrine because it concluded as a matter of law that the defendant's subjective expectation of privacy was not objectively reasonable.

"[W]e must be mindful that [t]his court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case." (Internal quotation marks omitted.) *State* v. *Cortes*, 276 Conn. 241, 253, 885 A.2d 153 (2005). Because there is no factual basis in the record that the defendant expected privacy in the invaded area, we question the propriety of the extensive constitutional analysis set forth in the concurring opinion. Such analysis supposes, absent any support in the record, that the defendant manifested an expectation of privacy in the invaded area. In light of the ambiguous record before us, it is consistent with this court's proper role to avoid such an analysis and to assume that, if the court properly analyzed the fourth amendment issue, it properly resolved the issue adverse to the defendant by finding that the defendant merely did not expect privacy in the invaded area.

Thus, our resolution of the reviewability issue does not hinge solely on the lack of a coherent legal analysis by the trial court, but also on the lack of factual findings that are integral to a proper legal analysis. The claim may be resolved on a purely factual ground, and the defendant, who bears the burden of providing this court with a record adequate for review, has not demonstrated that the court's ruling was not factually proper. By failing to demonstrate error, the defendant has left unchallenged a factual ground that we must presume exists and on which the court's ruling may be affirmed. Thus, we disagree with the concurring opinion insofar as it states that our resolution of the reviewability issue cannot be harmonized with the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). It

## II

Next, the defendant claims that the court's consciousness of guilt instruction likely misled the jury because the court failed to tailor the instruction to the specific charges at issue in this case. We decline to review this claim.

The record reflects that, during a charge conference, the prosecutor asked the court to deliver a consciousness of guilt instruction. The court agreed to deliver the instruction and read aloud the instruction that it intended to deliver. The defendant's attorney stated that he objected to the instruction and that he was unable to articulate at that time the ground of the objection. When the court raised the matter the following day, the defendant's attorney stated that he did not object to the instruction. Moments later, the defendant's attorney stated that he objected to the consciousness of guilt instruction but did not assert any ground for the objection. The court noted the defendant's objection.

During its charge, the court delivered a consciousness of guilt instruction. Following the charge, the defendant's attorney took an exception to the court's consciousness of guilt instruction. He did not assert any ground for the exception, merely stating: "Consciousness of guilt, we take exception to that."

"An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered.

suffices to observe that *Golding* does not provide for de novo review of all constitutional claims; the very first condition of the *Golding* analysis requires that "the record is adequate to review the alleged claim of error . . . ." Id. As our analysis reflects, the record is not adequate to reach the constitutional issue presented because it is wholly dependent on a finding of fact that does not appear in the record before us.

Counsel taking the exception shall state distinctly the matter objected to and the ground of the exception. The exception shall be taken out of the hearing of the jury." Practice Book § 42-16. "The purpose of the rule is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Internal quotation marks omitted.) *State* v. *Miller*, 186 Conn. 654, 658, 443 A.2d 906 (1982).

The defendant did not submit a written request to charge that included a consciousness of guilt instruction. Prior to the charge, the defendant's attorney objected to the consciousness of guilt instruction. He also took an exception to that instruction following the charge. In neither instance, however, did the defendant's attorney state a ground for the objection. The exception cannot be said to have alerted the court to any claim of error and, thus, did not satisfy the requirement of Practice Book § 42-16. This court "shall not be bound to consider a claim unless it was *distinctly raised at the trial* or arose subsequent to the trial. . . ." (Emphasis added.) Practice Book § 60-5. We decline to review the defendant's unpreserved claim of instructional error.

The judgment is affirmed.

In this opinion GRUENDEL, J., concurred.

ROBINSON, J., concurring. I agree with my colleagues that the conviction of the defendant, Frederick Payne, should be affirmed. I also agree with the analysis of the majority contained in part II of its opinion. I respectfully disagree, however, with the analysis in part I of the majority's opinion, which concludes that the record is insufficient for us to review the defendant's claim that the trial court improperly denied his motion

to suppress the evidence seized from his car on the basis of its determination that he abandoned any expectation of privacy in his automobile that society would deem reasonable. Because I conclude that the record contains a sufficiently detailed statement of the trial court's findings and undisputed facts to consider the defendant's abandonment claim, I also address the defendant's substantive constitutional claim and conclude that the defendant's right to be free from unreasonable searches and seizures, as enshrined in the fourth amendment to the United States constitution,[1] was not violated by the court's denial of his motion to suppress. Accordingly, I concur in the judgment of the majority.

As a preliminary matter, I am unable to reconcile our fourth amendment jurisprudence with the majority's contention that the record is inadequate for our review because the trial court's legal analysis of the abandonment issue is unclear. Our case law teaches that "when we determine that any of the issues raised on appeal present purely questions of law warranting plenary review, the issues may be reviewed despite the absence of a memorandum of decision or signed transcript because the legal analysis undertaken by the trial court is not essential to this court's consideration of the issues on appeal." *State* v. *James*, 93 Conn. App. 51, 57 n.6, 887 A.2d 923 (2006). It, therefore, bears emphasis that a "trial court's ultimate constitutional conclusions [are subject] to plenary oversight." *United States* v. *Zapata*, 18 F.3d 971, 975 (1st Cir. 1994); accord *United States* v. *Fernandez*, 559 F.3d 303, 330 (5th Cir.) ("we review

[1] The fourth amendment to the United States constitution provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The fourth amendment's exclusionary rule is applicable to the states through the fourteenth amendment to the United States constitution. See *Mapp* v. *Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

. . . constitutional conclusions de novo"), cert. denied, 558 U.S. 824, 130 S. Ct. 139, 175 L. Ed. 2d 36 (2009); see also *State* v. *Wilson*, 111 Conn. App. 614, 622, 960 A.2d 1056 (2008) (we "engage in a plenary review of the court's denial of the defendant's motion to suppress"), cert. denied, 290 Conn. 917, 966 A.2d 234 (2009); cf. *State* v. *Torres*, 230 Conn. 372, 378–79, 645 A.2d 529 (1994) ("[a] record is not inadequate . . . because the trial court has not reached a conclusion of law if the record contains the factual predicates for making such a determination"). Accordingly, because we review de novo the defendant's claim that the court improperly concluded that the defendant abandoned any objectively reasonable expectation of privacy in his car, I disagree with the majority that we need a more precise articulation of the trial court's legal reasoning to review this claim.[2]

---

[2] The majority suggests that the trial court's abandonment analysis is overly ambiguous because "it is unclear whether the court was referring to the defendant's *privacy* interest in the property or his *possessory* interest in the property." (Emphasis in original.) Majority opinion, 314. I am not persuaded. Although property law notions of abandonment are not dispositive in the fourth amendment context; see *State* v. *Mooney*, 218 Conn. 85, 107, 588 A.2d 145 ("[w]hether property has been abandoned, in this sense, does not depend on where legal title rests, or whether one asserting a Fourth Amendment right has a legally enforceable possessory interest in the property" [internal quotation marks omitted]), cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991), citing *Rakas* v. *Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); I disagree with the majority's suggestion that consideration of such concepts supports a conclusion that the trial court's legal analysis was on the wrong track.

The court in *Rakas* v. *Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), explained that, because it would "be merely tautological to fall back on the notion that those expectations of privacy which are legitimate depend primarily on cases deciding exclusionary-rule issues in criminal cases"; id., 144 n.12; reference to concepts of real or personal property law properly are considered to help legitimate expectations of privacy by providing a source outside of the fourth amendment. See id.; see also *State* v. *Boyd*, 57 Conn. App. 176, 188, 749 A.2d 637 (considering, inter alia, property interests to determine whether expectation of privacy is one society would deem reasonable), cert. denied, 253 Conn. 912, 754 A.2d 162 (2000). Consequently, while I do not believe it to be necessary for our plenary review of the constitutional question presently at issue to have a full articulation of

## I

Having concluded that a determination of whether the record in this case is sufficient for review does not hinge on the trial court's having articulated fully the legal reasoning underlying its abandonment analysis, I next consider whether the record is sufficient to review the defendant's claim that whatever subjective expectation of privacy he had in his car was one that society would find reasonable as a matter of law. I conclude that the record is sufficient for our review.[3]

Courts evaluating whether a person abandoned his or her expectation of privacy in an invaded area inquire (1) whether the presence of the police was lawful and

the trial court's legal analysis, I nevertheless note that the trial court's consideration of property interests may have been proper in the fourth amendment abandonment context if it was done to assess whether society would deem reasonable the defendant's asserted privacy interest.

[3] Although the defendant's failure to request a memorandum of decision or a signed transcript of the trial court's oral decision normally would result in an inadequate record for our review; see *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 405 n.10, 973 A.2d 1229 (2009); we previously have determined that a record may be adequate when an unsigned transcript contains a sufficiently detailed and concise statement of the trial court's findings. See *Watrous* v. *Watrous*, 108 Conn. App. 813, 831 n.8, 949 A.2d 557 (2008).

In this respect, our case law is also clear that, while "[t]his court will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim"; (internal quotation marks omitted) *State* v. *Beliveau*, 52 Conn. App. 475, 482 n.4, 727 A.2d 737, cert. denied, 249 Conn. 920, 733 A.2d 235 (1999); conclusions of fact may nevertheless be drawn on appeal in two circumstances: (1) where "the subordinate facts found [by the trial court] make such a conclusion inevitable as a matter of law"; *Papcun* v. *Papcun*, 181 Conn. 618, 621, 436 A.2d 282 (1980); or (2) where the undisputed facts or uncontroverted evidence and testimony in the record make the factual conclusion so obvious as to be inherent in the trial court's decision. See *State* v. *Wilson*, supra, 111 Conn. App. 622 (inferring fact necessary to review denial of motion to suppress on merits as "so obvious as to be inherent in . . . court's decision" [internal quotation marks omitted]). Accordingly, my reliance on the unsigned transcript of the court's oral decision for findings of fact that the court clearly made and on the undisputed facts in the record that obviously inhered in the court's decision is fully coterminous with the teaching of our relevant case law.

(2) whether a person's continued expectation of privacy was reasonable. See *State* v. *Oquendo*, 223 Conn. 635, 658, 613 A.2d 1300 (1992).[4] In connection with the second prong of this analysis, courts have used various factors to consider whether an objective expectation of privacy exists. "Such factors include [1] ownership of or other conventional property interests in the premises or its contents; [2] use of the location as a residence; [3] use of the premises on a regular basis for professional, religious, or business purposes; [4] presence at the time of the search, or at other times; [5] security measures undertaken by the defendant to ensure the privacy of the particular area searched; [6] a defendant's authority over the premises; [7] a defendant's ability or right to exclude others from the area; [8] use of the particular location as a repository for the defendant's personal belongings; [9] a defendant's subjective expectation that the premises would remain free from Government intrusion; and [10] whether any of the defendant's interests or efforts taken to ensure privacy were in existence or were undertaken at the time of the search or seizure. . . . Factors such as these are, of course, relevant as helpful guides, but should not be undertaken mechanistically. They are not ends in themselves; they merely aid in evaluating the ultimate question in all fourth amendment cases—whether the defendant had a legitimate expectation of privacy, in the eyes of our society, in the area searched." (Citations

---

[4] As I will more fully explain, our case law teaches that whether a person's continued expectation of privacy was reasonable is ultimately an objective test that is decided as a matter of law. See part II of this concurrence. Moreover, while this test includes consideration of a defendant's subjective expectation of privacy, that line of inquiry need not be addressed if any such expectation held by the defendant is objectively unreasonable. See id. Accordingly, in evaluating which facts must be included in the record of the present case for us to review the defendant's abandonment claim, I focus on the requisite objective considerations because I determine in part II of my concurrence that any subjective expectation of privacy held by the defendant was objectively unreasonable.

omitted; internal quotation marks omitted.) *State* v. *Boyd*, 57 Conn. App. 176, 188, 749 A.2d 637, cert. denied, 253 Conn. 912, 754 A.2d 162 (2000). With these guideposts in mind, I review both the transcript of the court's oral decision denying the motion to suppress and the undisputed facts in the record to ascertain whether there is a sufficient basis to determine whether the presence of the police was lawful and whether the defendant's continued expectation of privacy was reasonable.

In the present case, the court stated both (1) that the police had a lawful reason to be where they were when they searched the defendant's car because "based upon the evidence . . . [the defendant], identified as the person operating the vehicle, did not heed to the police warning to stop . . . [and] the car ran into the house" and (2) that "[g]iven the fact that the testimony reveals that upon attempting to elude the police and not responding to their call—to their stop, either in the automobile as well as on foot, that he, in fact, abandoned the property and therefore relinquished the knowing right to that property by his abandonment." Thus, by concluding that the presence of the police was lawful, the court made a finding as to the first prong of the abandonment analysis. Moreover, by stating that the defendant abandoned his property by running from the police and then holding that its decision to deny the defendant's motion to suppress was, in part, predicated on the abandonment doctrine, the court drew a legal conclusion that the defendant abandoned his car for purposes of the fourth amendment. I also note that both parties conceded during oral argument that the defendant fled on foot from police after crashing his car and that the undisputed evidence confirms that the car was unlocked when the police conducted their search. Thus, the record addresses several of the factors enumerated in *Boyd* that are relevant to ascertaining

whether the defendant abandoned any reasonable expectation of privacy he had in his automobile, such as: the defendant's presence at the time of the search, or at other times; security measures undertaken by the defendant to ensure the privacy of the particular area searched; the defendant's ability or right to exclude others from the area; and whether the defendant's interests or efforts taken to ensure privacy were in existence or were undertaken at the time of the search or seizure. In light of these findings and undisputed facts, I conclude that there is a sufficient record for us to review the defendant's claim that the court improperly denied his motion to suppress on the ground that he abandoned any reasonable expectation of privacy in his car.

Moreover, I believe this approach is further buttressed by our Supreme Court's holding in *State* v. *Torres*, supra, 230 Conn. 372. In that case, the defendant appealed from his conviction on the ground that the trial court improperly denied his motion to suppress evidence seized in a warrantless search of his automobile. Id., 374. On appeal to this court,[5] the defendant in that case argued for the first time that a canine sniff constituted a search under our state and federal constitutions, which this court declined to review because the record was inadequate to address that issue under the first prong of *State* v. *Golding*, 213 Conn. 233, 239, 567 A.2d 823 (1989). *State* v. *Torres*, supra, 376–77. Specifically, this court found the record to be insufficient because the trial court had not made any findings of fact or drawn any legal conclusions as to whether the sniff was a search under the state or federal constitution, or, if it was a search, whether the search was supported by reasonable and articulable suspicion. Id., 377.

[5] See *State* v. *Torres*, 31 Conn. App. 443, 625 A.2d 239 (1993), aff'd, 230 Conn. 372, 645 A.2d 529 (1994).

Reversing this court's decision, our Supreme Court held that "a conclusion of law can properly be made by an appellate court, even if the trial court was never asked to make, and never made, such a determination, so long as the factual record is adequate to provide the basis for such a conclusion." Id., 379. Noting that "[r]easonable and articulable suspicion is an objective standard" and that "the question of whether reasonable and articulable suspicion arises from an underlying set of facts is a legal conclusion that, if made by a trial court, is subject to plenary review by an appellate court"; id.; our Supreme Court held that there was "an adequate record for review" because "the record contain[ed] undisputed facts sufficient to determine that a canine sniff had occurred and the circumstances under which it had occurred." Id., 380.

Like the defendant in *Torres*, the defendant in the present case also appeals from his conviction on the ground that the trial court improperly applied the fourth amendment in denying his motion to suppress. Moreover, the respective fourth amendment questions at issue in both cases involved objective standards that are decided as a matter of law,[6] and the underlying

---

[6] I am aware that in *Torres*, our Supreme Court emphasized that the reasonable and articulable suspicion test does not focus on the actual state of mind of the police officer; *State* v. *Torres*, supra, 230 Conn. 379; which differs slightly from the test used to determine whether a person has abandoned his or her expectation of privacy in an invaded area. See *Katz* v. *United States*, 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring) (whether defendant had [1] subjective expectation of privacy and [2] it was one society would deem objectively reasonable) (*Katz* test). Nevertheless, *Torres* remains persuasive because the subjective prong of *Katz* need not be reached here; see *State* v. *DeFusco*, 224 Conn. 627, 633 n.9, 620 A.2d 746 (1993) ("whether the defendant possessed a subjective expectation of privacy . . . is unnecessary to the resolution of [*DeFusco*] in light of our conclusion that the defendant has not satisfied the second part of the *Katz* test"); and because the underlying facts in this case provide a sufficient record for our review of the dispositive objective prong in *Katz*.

factual predicates in both cases provided sufficient records for this court to decide, as a matter of law, the objective inquiries necessary to resolve those fourth amendment claims. Indeed, if, under *Golding*, we are required to review a claim on appeal that the parties neither briefed nor argued and which the trial court neither considered nor decided because that claim involved a fourth amendment issue that was to be decided as a matter of law under an objective reasonableness standard, and there were sufficient underlying facts to decide that question, then, a fortiori, we should reach the abandonment issue in this case. Here, the parties actually briefed and argued, and the trial court considered and decided, the abandonment issue, which also involves a fourth amendment question that ultimately should be decided as a matter of law under an objective reasonableness standard, and there are sufficient underlying facts in this record to decide that question.

Although the majority cites *State* v. *Canales*, 281 Conn. 572, 583–84, 916 A.2d 767 (2007), for the proposition that this court will not review a claim unless it is based on a complete factual record developed by the trial court, I am not convinced that *Canales* is a useful analog to the present case. In *Canales*, the defendant sought review of a constitutional question for which evidence had never been adduced. Id., 582 (record inadequate because "the court was not provided with evidence upon which it could make a probable cause determination"). That is not the current situation, as the majority concedes that both the defendant and the state in the present case adduced evidence of abandonment during the suppression hearing, which was reflected by the transcript of that hearing. See majority opinion, 311 ("[t]he transcript reflects the court's findings with regard to the circumstances surrounding the

search and seizure generally, as well as the court's conclusion that four independent bases supported the legality of the search and seizure"). Accordingly, because this is not a case where no evidence was introduced on which the court could consider the legal theory advanced by the defendant, I believe that *Torres*, and not *Canales*, provides the more persuasive guide for our resolution of the issues presented in this appeal.

In light of my conclusions (1) that an appellate court does not require for its plenary review of a constitutional claim an articulation of the trial court's legal reasoning, (2) that the record in the present case contains a sufficient factual basis to allow for meaningful review of the defendant's objective expectation of privacy, as guided by the factors enumerated in *State* v. *Boyd*, supra, 57 Conn. App. 188, and (3) that our Supreme Court has held in an analogous case that, notwithstanding a trial court's failure to make specific factual findings or conclusions of law, this court should nevertheless reach the merits of a defendant's constitutional claim if the record is sufficient for us to do so as a matter of law, I conclude that this case should be resolved on its merits. Accordingly, I next consider the defendant's substantive argument that the court improperly denied his motion to suppress because he had abandoned his reasonable expectation of privacy in his automobile.

II

Invoking the fourth amendment, the defendant argues that the evidence recovered from the passenger compartment of his car should have been suppressed because the seizure of that evidence took place without a warrant.[7] To this end, the defendant contends both

[7] On appeal, the defendant does not assert a violation of our state constitution and has provided no independent state constitutional analysis. I thus limit my review to the defendant's federal constitutional claims. See *State* v. *Merriam*, 264 Conn. 617, 631 n.17, 835 A.2d 895 (2003).

that he did not abandon his car and that the abandonment doctrine does not apply to automobiles. More specifically, the defendant avers that running away from a car is not the same as discarding property and that he did not discard his car. He further posits that the abandonment doctrine should not apply to cars because doing so "would mean that any time a car is in a car accident and the driver gets out, regardless of the circumstances, the doctrine of abandonment [would apply]." I am not persuaded.

In light of the tension in our jurisprudence regarding abandonment claims made under the fourth amendment,[8] I pause briefly to set forth what I believe to be the standard of review. In the fourth amendment context, "[w]hether property has been abandoned . . . does not depend on where legal title rests, or whether one asserting a Fourth Amendment right has a legally enforceable possessory interest in the property; the question, rather, is whether the person claiming the protection of the Fourth Amendment has a legitimate expectation of privacy in the invaded place. . . . In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein. . . . Furthermore, although the fourth

[8] Our precedent concerning the application of the *Katz* test in the abandonment context appears to be inconsistent; some cases suggest that it is a factual determination that is subject to our clearly erroneous standard of review, while other cases state that it is ultimately an objective test that is to be decided as a matter of law. Compare *State* v. *Oquendo*, supra, 223 Conn. 660 ("The trial court concluded that the defendant had no reasonable expectation of privacy in the duffel bag that he discarded during [a police officer's] pursuit of him. This conclusion of the trial court was *clearly erroneous*." [Emphasis added.]) with *State* v. *Mooney*, 218 Conn. 85, 108, 588 A.2d 145 ("[t]he test is whether, under all the facts, the owner or possessor may fairly be deemed *as a matter of law* to have relinquished his expectation of privacy in the object in question" [emphasis added]), cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). As I will explain further, in light of the jurisprudential kinship that our fourth amendment abandonment and standing doctrines share, I harmonize this tension by concluding that the subjective inquiry is a factual determination, while the objective inquiry is a question of law.

amendment notion of abandonment is not congruent with its common law counterpart, it is relevant although not necessary to the fourth amendment abandonment inquiry whether the defendant manifested by his conduct an intent to shed, albeit temporarily, his expectation of privacy in the item or container involved." (Citations omitted; internal quotation marks omitted.) *State* v. *Mooney*, 218 Conn. 85, 107, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).[9] Consequently, courts evaluating whether a person abandoned his or her expectation of privacy in an invaded area usefully are guided by inquiring (1) whether the presence of the police was lawful and (2) whether a person's continued expectation of privacy was reasonable. See *State* v. *Oquendo*, supra, 223 Conn. 658.

In evaluating the second prong of this analysis, courts employ the seminal, two part subjective-objective test articulated in *Katz* v. *United States*, 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring) (*Katz* test).[10] Thus, courts should consider: "(1) whether

[9] As explained in footnote 2 of this opinion, while property law notions of abandonment are not dispositive in the fourth amendment context, they may nevertheless be considered properly in evaluating whether a defendant's putative expectation of privacy is one society would deem reasonable.

[10] As an initial matter, I note that our Supreme Court likewise has turned to the *Katz* test that it employs in the standing context to evaluate difficult questions of abandonment. See *State* v. *Mooney*, supra, 218 Conn. 110–13 (returning to "first principles" of standing jurisprudence to use *Katz* test in abandonment analysis). Moreover, reliance on the *Katz* test seems particularly appropriate in light of its foundational significance to our fourth amendment jurisprudence. See, e.g., *Rakas* v. *Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) ("*Katz* [test] . . . provides guidance in defining the scope of the interest protected by the Fourth Amendment"); see also *Kyllo* v. *United States*, 533 U.S. 27, 34, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001) (*Katz* test used to determine whether use of thermal imaging scanner is "search" for fourth amendment purposes); *State* v. *Gonzalez*, 278 Conn. 341, 349–54, 898 A.2d 149 (2006) (*Katz* test used to determine standing); *State* v. *DeFusco*, 224 Conn. 627, 633, 620 A.2d 746 (1993) (*Katz* test used to determine whether Connecticut's constitution affords greater protection than federal law for specific type of warrantless search); see also 1 W.

the [person contesting the search] manifested a subjective expectation of privacy with respect to [the invaded premises]; and (2) whether that expectation [is] one that society would consider reasonable." (Internal quotation marks omitted.) *State* v. *Boyd*, supra, 57 Conn. App. 184.[11] This analysis involves a "fact-specific inquiry into all the relevant circumstances," and the "defendant bears the burden of establishing the [necessary] facts . . . ." (Citations omitted; internal quotation marks omitted.) Id. "Findings of subjective intent are findings of fact, which we review only under a clearly erroneous standard. However, a determination of whether the defendant retained an objectively reasonable expectation of privacy in the property that society will recognize is a question of law that we review de novo." *United States* v. *Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997). Finally, because a defendant must satisfy both prongs of this analysis, failure to meet either prong is fatal to a defendant's standing to assert a fourth amendment violation. See *State* v. *DeFusco*, 224 Conn. 627, 633 n.9, 620 A.2d 746 (1993) ("whether the defendant possessed a subjective expectation of privacy . . . is unnecessary to the resolution of this case in light of our conclusion that the defendant has not satisfied the second part of

LaFave, Search and Seizure (4th Ed. 2004) § 2.1 (b), p. 435 ("*Katz* [test] has rapidly become the basis of a new formula of fourth amendment coverage" [internal quotation marks omitted]). Finally, I am persuaded that the *Katz* test utilized in the standing context is the proper analytical tool to turn to for guidance in this case because abandonment and standing are flip sides of the same coin. See id., § 2.5 (a), p. 645 ("by abandoning the vehicle, [a defendant] ha[s] no standing to object").

[11] Where appropriate, courts grappling with a defendant's putative subjective or objective expectation of privacy may find helpful to their analyses the factors enumerated in *Boyd*. See *State* v. *Boyd*, supra, 57 Conn. App. 185 (considerations for determining subjective expectation of privacy include whether "[1] [defendant's] relationship with the location was personal in nature, [2] his relationship with the location was more than sporadic, irregular or inconsequential, and [3] he maintained the location and the items within it in a private manner at the time of the search"); id., 188 (enumerating considerations for determining objective expectation of privacy).

the *Katz* test");[12] see also *State* v. *Ramirez*, 79 Conn. App. 572, 579, 830 A.2d 1165 ("[t]he second element of the 'reasonable expectation of privacy' test is dispositive of the issue in [*Ramirez*] because the facts found by the court establish as a matter of law that the defendant's subjective expectation of privacy, if any, was not reasonable"), cert. denied, 267 Conn. 902, 838 A.2d 211, 212 (2003).[13]

---

[12] I am aware that the court in *DeFusco* considered whether Connecticut's constitution affords greater protection than federal law for a specific type of warrantless search and did not resolve a question of standing or abandonment. *State* v. *DeFusco*, supra, 224 Conn. 633. Nevertheless, in deciding that question, the court employed the same subjective-objective test articulated in *Katz* that guides our standing and abandonment analysis. See id., 633 n.10 ("[t]he reasonable expectation of privacy inquiry is essentially identical to the constitutional abandonment inquiry"). Accordingly, the application of the *Katz* test in *DeFusco* is instructive to my application of the same test in this case.

[13] In footnote 3 of its opinion, the majority cites several cases to support its understanding that a court is required to make a finding of fact as to a defendant's subjective expectation of privacy before it can consider whether that expectation was objectively reasonable. The approach adopted in *DeFusco* and *Ramirez*, however, suggests that the *Katz* test need not be applied so rigidly. Indeed, both *DeFusco* and *Ramirez*, as well as federal precedent, suggest that the record need only contain those findings of fact or undisputed facts necessary to resolve the objective prong of the *Katz* test if that analysis is dispositive. Thus, because I do not believe it is necessary to consider the subjective prong of the *Katz* test in every case, I believe that the record before us is adequate because it contains sufficient findings of fact and undisputed facts to resolve the objective *Katz* prong, which I believe to be dispositive.

As an initial observation, I note that the United States Court of Appeals for the Second Circuit has applied the *Katz* test by inquiring into the objective prong first, which suggests that the test need not be applied so rigidly. See, e.g., *United States* v. *Perea*, 986 F.2d 633, 639 (2d Cir. 1993) ("a defendant may establish that he had a right protected by the Fourth Amendment by showing [a] that he had an expectation of privacy that society is prepared to recognize as reasonable, and [b] that he had conducted himself and dealt with the property in a way that indicated a subjective expectation of privacy").

Additionally, I find persuasive our federal case law that either states explicitly that it is not necessary to consider the subjective prong of *Katz* if a defendant cannot meet the objective prong or simply concludes that there is not a reasonable expectation of privacy without even considering the subjective prong. See, e.g., *California* v. *Greenwood*, 486 U.S. 35, 39–41, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988) (court assumed defendants had

Because the defendant does not challenge the lawfulness of the police being present on the night in question, my inquiry is limited to whether, as a matter of law, the defendant had a reasonable expectation of privacy in the car from which he ran after crashing it into the house on Peck Street in New Haven. Although the defendant argues—without citing any supporting case law—that he did not abandon a reasonable expectation of privacy in his car by leaving it unattended, the overwhelming weight of precedent teaches that a suspect leaving behind a vehicle while fleeing from lawful police pursuit does not maintain an expectation of privacy in the vehicle that society would deem reasonable. See, e.g., *United States* v. *Soto-Beniquez*, 356

subjective expectation of privacy but concluded it was not one society would deem reasonable); *California* v. *Ciraolo*, 476 U.S. 207, 211–12, 214, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986) (court noted that "[w]hether respondent therefore manifested a subjective expectation of privacy . . . is not entirely clear in these circumstances" but concluded that "we need not address that issue" and held there was no objectively reasonable expectation of privacy); *United States* v. *Hinton*, 222 F.3d 664, 676 (9th Cir. 2000) ("[b]ecause there is no reasonable expectation of privacy in a parcel locker at a post office, we need not determine if [the defendant] had a subjective expectation of privacy therein"), cert. denied, 531 U.S. 1200, 121 S. Ct. 1209, 149 L. Ed. 2d 122 (2001); *Vega-Rodriguez* v. *Puerto Rico Telephone Co.*, 110 F.3d 174, 178 (1st Cir. 1997) ("[F]or purposes of this appeal, we are willing to assume arguendo that the appellants, as they profess, had some subjective expectation of privacy while at work. We turn, then, to the objective reasonableness of the asserted expectation of privacy."); *United States* v. *Marchant*, 55 F.3d 509, 517 (10th Cir.) ("[e]ven assuming Defendant has demonstrated a subjectively reasonable expectation of privacy, we do not believe that society would find it objectively reasonable that [he had] a legitimate expectation of privacy"), cert. denied, 516 U.S. 901, 116 S. Ct. 260, 133 L. Ed. 2d 184 (1995); *Andree* v. *Ashland County*, 818 F.2d 1306, 1314 (7th Cir. 1987) ("It is doubtful whether plaintiffs have satisfied the first part of that inquiry, i.e., that they had a subjective expectation of privacy. In any event, they failed the second, as any such expectation would have been plainly unreasonable."); *United States* v. *Berrong*, 712 F.2d 1370, 1373 (11th Cir. 1983) ("[t]he question whether appellant Berrong exhibited a subjective expectation of privacy need not detain us because, applying the second prong of the *Katz* test, we conclude that the expectation, if any, was not reasonable"), cert. denied, 467 U.S. 1209, 104 S. Ct. 2397, 81 L. Ed. 2d 354 (1984). Accordingly, while I am mindful of the majority's thoughtful analysis and the precedent cited to support that approach, I am nevertheless compelled to disagree respectfully with its application of the *Katz* test on the basis of these cases.

F.3d 1, 36 (1st Cir. 2003) (when "a defendant abandons property while he is being pursued by police officers, he forfeits any reasonable expectation of privacy he may have had in that property"), cert. denied, 541 U.S. 1074, 124 S. Ct. 2432, 158 L. Ed. 2d 985 (2004); *United States* v. *Washington*, 12 F.3d 1128, 1132 (D.C. Cir.), cert. denied, 513 U.S. 828, 115 S. Ct. 98, 130 L. Ed. 2d 47 (1994); *United States* v. *Walton*, 538 F.2d 1348, 1354 (8th Cir.), cert. denied, 429 U.S. 1025, 97 S. Ct. 647, 50 L. Ed. 2d 628 (1976); *United States* v. *D'Avanzo*, 443 F.2d 1224, 1226 (2d Cir.), cert. denied, 404 U.S. 850, 92 S. Ct. 86, 30 L. Ed. 2d 89 (1971); *United States* v. *Edwards*, 441 F.2d 749, 752–54 (5th Cir. 1971). As was true in those cases, the record in the present case is clear that the defendant likewise was fleeing from the police when he left his car unattended. Moreover, the undisputed facts in the record demonstrate that the defendant's car was unregistered and that he left it unlocked and inoperable, with the rear portion of his car resting on a public sidewalk.[14] Under these circumstances, the trial court correctly concluded as a matter of law[15] that the defendant had abandoned his expecta-

[14] In addition to the well settled line of cases holding that a vehicle is deemed abandoned when vacated for the purposes of fleeing from the police, I also note those cases holding that a person abandons his car when he vacates it to flee from the scene of an accident. See, e.g., *State* v. *Anderson*, 548 N.W.2d 40, 44 (S.D. 1996) (car deemed abandoned when driver fled accident scene on foot, leaving car disabled on public road with keys in it). Accordingly, because the defendant in the present case left his car unlocked and partially resting on a public sidewalk to flee the scene of an accident, this line of cases further buttresses my conclusion that he abandoned his car.

[15] Although I agree with the court's ultimate legal conclusion that the defendant abandoned his expectation of privacy in his automobile for the reasons set forth in this concurrence, I express no opinion as to the legal analysis that the court utilized to reach that conclusion. See generally *State* v. *James*, supra, 93 Conn. App. 57 n.6 (when issues raised on appeal present purely questions of law, "legal analysis undertaken by the trial court is not essential to this court's consideration of the issues on appeal"); cf. *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978) (even if correct result reached due to inaccurate legal analysis, this court not required to reverse ruling of trial court that nevertheless reached correct result).

tion of privacy in the car for purposes of the fourth amendment.[16]

The defendant next argues that even if he did abandon his car for some short period of time, the abandonment doctrine should not apply to cars because doing so "would mean that any time a car is in a car accident and the driver gets out, regardless of the circumstances, the doctrine of abandonment [would apply]." In this regard, the defendant additionally cautions that applying the abandonment doctrine to the facts presented in this case "would establish a movable and fluid line for determining when a constitutional right was abandoned." I disagree.

As with any assessment of how reasonable a person's expectation of privacy is in an invaded place, the evaluation of how reasonable a person's expectation of privacy is in their vehicle at any given time necessarily requires "all the surrounding circumstances" to be considered. 1 W. LaFave, Search and Seizure (4th Ed. 2004) § 2.5 (a), p. 646; see also *State* v. *Mooney*, supra, 218 Conn. 108 ("[t]he test is whether, *under all the facts*, the owner or possessor may fairly be deemed as a matter of law to have relinquished his expectation of privacy in the object in question" [emphasis added]). Consequently, quite to the contrary of the defendant's concerns, our fourth amendment jurisprudence forbids any bright line rule that would allow for a vehicle to be deemed abandoned simply because the driver gets out of their car and leaves it unattended and instead requires the consideration of all circumstances to determine the reasonableness of any ongoing expectation of privacy.

For the foregoing reasons, I respectfully concur.

---

[16] Because I conclude that the defendant abandoned any reasonable expectation of privacy that he had in this automobile, I do not reach his other fourth amendment claims.